# INDEX OF DOCUMENTS IN EXHIBIT I (DOCUMENTS RECEIVED FROM CIRCUIT COURT CLERK RELATED TO PRICE'S STATE POST-CONVICTION PETITION)

Description                                                          Page Number

1. Case Action Summary                                                        1

2. Order Denying Rule 32 Petition                                          2-3

3. Motion for Disqualification Filed by Price                              4-5

4. State's Response to Rule 32 Petition                                    6-8

5. Order Granting *In Forma Pauperis* Status                                 9

6. Motion for Evidentiary Hearing Filed by Price                        10-13

7. Rule 32 Petition Form                                              14-20, 24

8. *In Forma Pauperis* Form                                        21-23, 25-27

9. Rule 32 Petition-Issues Presented and Argument                      28-162

10. Cooperating/Confidential Informant Agreement                      163-164

11. Page from Price's Pre-Sentence Report                                  165

12. Affidavit of Kenneth Rex Price                                     166-68

13. Affidavit of Kenneth Rex Price                                    169-172

14. Letter from Smith and Carr, L.L.C. to Price                           173

15. Letter from Price to Attorney Carr                                 174-78

16. *Anders* order from the Alabama Court of                              179
Criminal Appeals to Price

EXHIBIT
I

17. Letter from Price to Attorney Carr ....................................................... 180-81

18. Motion for Appointment of Counsel Filed by ...................................... 182-83

Price

19. Letter from Attorney Carr to Price ............................................................ 184

20. Letter from Court of Criminal Appeals's Clerk ..................................... 185

to Price

21 Motion for Extension of Time to File a Brief ........................................ 186

(*Pro Se* Issues) Filed by Price

22. Motion Granted by Court of Criminal Appeals ..................................... 187

23. Letter from Price to Attorney Carr .................................................... 188-89

24. Notice From Court of Criminal Appeals that *Pro* ................................ 190

*Se* Issues Were Filed

25. Memorandum Opinion from Alabama Court of ................................ 191-92

Criminal Appeals Affirming Price's Convictions on

Direct Appeal

26. Letter from Court of Criminal Appeals to Price ..................................... 193

27. Application for Rehearing Overruled ...................................................... 194

28. Certificate of Judgment/Writ of Certiorari ............................................ 195

Denied

29. Letter from Price to Attorney Carr .................................................... 196-98

30. Court of Criminal Appeals Invoice                    199

31. Computer Printout                                    200

32. Blank Page                                           201

33. <u>Anders</u> Brief filed by Attorney Carr           202-09

34. Price's *Pro Se* Issues

```
ACRO370                ALABAMA JUDICIAL INFORMATION SYSTEM        CASE: CC 2002 000134.60
OPER: JOP                      CASE ACTION SUMMARY
PAGE:   1                        CIRCUIT  CRIMINAL                  RUN DATE: 04/08/2005
```

IN THE CIRCUIT COURT OF    PIKE
                                                                        JUDGE: JWK
STATE  OF  ALABAMA                  VS      PRICE KENNY
                                           AIS   150784
CASE: CC 2002 000134.60                    ~~100 WARRIOR LANE~~ *P.O. Box 767*
                                           ~~BESSEMER, AL 35023 7299~~
                                                              *Clayton, AL 36016*
DOB: 11/01/1958         SEX: M  RACE: W  HT: 5.07  WT: 155   HR: BRO EYES: BRO
SSN: 417927232  ALIAS NAMES:

CHARGE01: RULE 32-FELONY          CODE01: RULE  LIT: RULE 32-FELONY TYP: F #: 001
OFFENSE DATE:                             AGENCY/OFFICER: 0550000

DATE WAR/CAP ISS:
DATE     INDICTED:                    DATE ARRESTED:
DATE     RELEASED:                    DATE     FILED: 04/07/2005
         BOND AMOUNT:      $.00       DATE   HEARING:
                                         SURETIES:

DATE 1:            DESC:               TIME: 0000
DATE 2:            DESC:               TIME: 0000

  TRACKING NOS: CC 2002 000134 00  /                        /

   DEF/ATY:                        TYPE:                        TYPE:

                          00000                      00000

PROSECUTOR: MCALILEY GARY L


OTH CSE: CC200200013400 CHK/TICKET NO:                 GRAND JURY:
COURT REPORTER:                     SID NO:      000000000
DEF STATUS: PRISON                  DEMAND: N
                                                                OPER: JOP
```
TRANS DATE    ACTIONS, JUDGEMENTS, AND NOTES
                                                                        OPE
```

| TRANS DATE | ACTIONS, JUDGEMENTS, AND NOTES | | OPE |
|---|---|---|---|
| 04/08/2005 | ASSIGNED TO: (JWK) JEFFERY W KELLEY | (AR01) | JOP |
| 04/08/2005 | CHARGE 01: RULE 32-FELONY/#CNTS: 001 | (AR01) | JOP |
| 04/08/2005 | FILED ON: 04/07/2005 | (AR01) | JOP |
| 04/08/2005 | INITIAL STATUS SET TO: "P" - PRISON | (AR01) | JOP |
| 04/08/2005 | CASE ACTION SUMMARY PRINTED | (AR08) | JOP |
| 4-7-05 | Order granting Rule 32 a orders response w/i 30 days - DA, Δ | | |
| 4-7-05 | On 3-21-05 State filed Response | | |
| 4-7-05 | On 3-28-05 In Support of Rule 32 Petition by Δ | | |
| 4-7-05 | On 3-29-05 Petitioner Response to State Response to Petitioner Rule 32 Petition | | |
| 6-21-05 | Order denys - Rule 32  DA, Δ | | |
| 6-24-05 | Mailed 6-21-05 Order again to Δ at Clayton address | | |
| 2-2-06 | Motion for Order of Nunc Pro Tunc Wrong Case | | |

## IN THE CIRCUIT COURT OF
## PIKE COUNTY, ALABAMA

KENNETH REX PRICE,        *

    PETITIONER,        *

VS.        *   CASE NO: CC-2002-134 & 136.60

STATE OF ALABAMA,        *

    RESPONDENT.        *

## ORDER

This matter comes before this court by Petitioner for Relief from Conviction or Sentence pursuant to Rule 32, Alabama Rules of Criminal Procedure, the State's Response and the Petitioners Response to the State's Response.

The court find that the Petitioner raised the issue of ineffective assistance of trial counsel in his Brief on appeal to the Alabama Court of Criminal Appeals. The court further finds the Petitioner raised in his brief on appeal the same or similar issues regarding ineffective assistance of trial counsel that are raised in this Rule 32 Petition. The Court of Criminal Appeals ruled on the merits and affirmed the conviction. The Alabama Supreme Court denied the Writ of Petition for Writ of Certiorari. All of the issues raised in the Rule 32 Petition was addressed in the Petitioners appeal, with the exception of ineffective assistance of appellant counsel.

It is **ORDERED** that all of the grounds raised by the Petitioner in this Rule 32 Petition, (excluding ineffective assistance of counsel) are precluded as they were raised or addressed on appeal. With regards to the issue/ground of ineffective assistance of appellant counsel the court finds that the Petitioner alleges that appellant counsel was ineffective because he did not raise certain issues on appeal. The issues the Petitioner claims that appellant counsel did not raise on appeal were the same issues the Petitioner addressed in his Brief to the Court of Criminal Appeals and ruled on by the Court of Criminal Appeals.

The court finds that there is no merit to the Petitioner's allegations in ineffective assistance of appellant counsel as the Court of Criminal Appeals has determined trial counsel was not ineffective, regarding the same issues.

3

Based upon the above the Rule 32 Petition is summarily ***DENIED.***

Done this the _____ 17th day of _____ June _____, 2005.



JEFF W. KELLEY
CIRCUIT JUDGE

JUN 2005
FILED
Brenda Meadows Peacock
Court Clerk
Pike Co., Ala.

PIKE COUNTY CIRCUIT COURT
TROY ALABAMA

Kenneth Price
PETITIONER

```
                    *
                    *
                    *
                    *
                    *
                    *
                    *
                    *    CC-02-134:CC-02-136
                    *    ─────────────────────
    Alabama──        *    case no.
    State           *
                    *
                    *
                    *
                    *
                    *
                    *
                    *
                    *
```

IN SUPPORT OF RULE 32 PETITION

MOTION FOR DISQUALIFICATION OF THE
HONORABLE- DISTRICT ATTORNEY GARY L. McALILEY.

Comes now Kenneth Price, in the above styled cause
pursuant to Judicial Ethics, Cannon 3C.Disqualification
(1)(a) of the ,Pike County Circuit Judge
  Gary L.McAliley,and states as follows:

(1) I Kenneth Price believes that the same District
attorney; Gary L. McAliley is the Judge that presided
in the petitioners case in November 2002
Case no. CC-02-134-CC-02-136

(2) Alabama rules of court states concerning Cannons of
Judicial Ethics Cannon 3,6, Disqualification which states;

    (C.) DISQUALIFICATION

,A,Judge should disqualify himself in a proceeding in which
his disqualification is required by law or his impartiality
might reasonably be questioned, including but not limited
to instances where he has personal Knowledge of
disputed evidential facts concerning the proceeding
or personal bias or prejudice concerning a party .

1

If true the D.A. Gary L. McAliley did presided over case no CC-02-134-CC-02-136 the petitioner request that he excuse himself due to a potential conflict.

CONCLUSION

Wherefore primises considered petitioner request if its true and the D.A. Gary L.McAliley is one and the same he should be disqualified due to a potential conflict of interest .

Done this the ___24___ day of *March, 2005*

Respectfully Submitted

*Kenneth Price*
KENNETH PRICE
150784 A.I.S.
W.E. Donaldson C.F.
100 Warrior Lane
Bessemer Al. 35023

Certificate of Service

Ihereby certitybthat I have served a copy of the foregoing upon the District Attorney Office, Post Office Box 812, Troy Alabama,36081 by placing said in the U.S. mail, postage prepaid and properly addressed, on this , the___24___ DAYOF *March* , *2005*

*Kenneth Price,*
Petitioner
Kenneth Price   Pro-Se
150784 BDB-7
100 Warrior Lane
Bessemer Alabama 35023

2

## IN THE CIRCUIT COURT OF PIKE COUNTY, ALABAMA

KENNETH REX PRICE,
PETITIONER,

VS.                                         CASE NO.S: CC 02-134 & 136

STATE OF ALABAMA,
RESPONDENT.

### STATE'S RESPONSE TO RULE 32 PETITION

Comes now the State of Alabama, by and through the undersigned Assistant District Attorney, and hereby makes response to the Petitioner's Rule 32 prayer for relief, and states as follows:

1. The Petitioner has appealed his conviction, stating the same grounds as he raises in the present petition, to the Alabama Court of Criminal Appeals which affirmed his conviction.

2. The Petitioner has unsuccessfully petitioned the appellate courts for review of his case.

3. The Alabama Court of Criminal Appeals issued a "Certificate of Judgment" on August 13, 2004.

4. The Petitioner's Rule 32 Petition was filed March 14, 2005, more than one year since issuance of the "Certificate of Judgment."

5. The Petitioner does not identify any newly discovered evidence that was not known at the time of the trial.

6. The Petitioner's grounds for relief, as indicated on his Rule 32 Petition are: 32.1 {a}; 32.1{c}; and 32.1{e}.

7. The Petitioner's prayer for relief is precluded for the following reasons:

    a.  Pursuant Rule 32.2 {c}: Limitation period: (for 32.1{a}and {e} relief) filing exceeded one year since issuance of Certificate of Judgment by Court of Criminal Appeals.

    b.  Pursuant Rule 32.2{a}(4}& {5}: All the issues raised could have been or were raised on appeal.

    c.  Pursuant Rule 32.2{d}: (according to Petitioner, the issue of ineffective assistance of counsel was raised in the trial court motion for new trial) Therefore this issues has been raised and ruled on by the trial court, and the Court of Criminal appeals.

8.  The Petitioner's ground that the sentence imposed exceeds the maximum authorized by low or is otherwise not authorized by law is not founded. The sentence he received was 25 years in each case. The Petitioner had notice of the State's intention to use the Habitual Offender Act to enhance any sentence he may receive. The Petitioner had 5 proper prior felony convictions which made his sentencing range 20 years to Life, not to exceed 99 years. Obviously the sentences he received are within said range of punishment.

Therefore, the State opposes all relief requested by the Petitioner and is of the belief that his Petition should be summarily denied.

Done this the 21st day of March, 2005.

Larry C. Jarrell (JAR001)
Assistant District Attorney
12th Judicial Circuit
Troy, Alabama 36081
(334) 566-6896

## CERTIFICATE OF SERVICE

I hereby certify that I have served the Petitioner a copy of the foregoing on this the 21st day of March, 2005, by U.S. Mail, postage prepaid at the following address: Kenneth R. Price, A.I.S. #15078 4-B-7, 100 Warrior Lane Bessemer, Alabama 35023-7299.

Larry C. Jarrell

MAR 2005

Court Clerk
Pike Co., Ala.

# IN THE CIRCUIT COURT OF
# PIKE COUNTY, ALABAMA

KENNETH REX PRICE,                          *
                                            *
    PETITIONER,                             *
                                            *
VS.                                         *         CASE NO: CC-2002-134 & 136
                                            *
STATE OF ALABAMA,                           *
                                            *
    RESPONDENT.                             *

## ORDER

The Petitioner's Application for Leave to Proceed in Forma Pauperis is *Granted*. The Clerk of Court shall forward a copy of the Rule 32 Petition to the Office of District Attorney and the State shall file a response within thirty (30) days of receipt of service.

Done this the 5th day of April, 2005.


_____
JEFF W. KELLEY
CIRCUIT JUDGE

APR 2005

Dept
Av/ Rule 32

IN THE CIRCUIT COURT OF PIKE COUNTY ALABAMA.

KENNETH REX PRICE,  
   Petitioner,

    VS.

STATE OF ALABAMA,  
   Respondent

CASE NO.  
(RE: CC02-134,136.)

## MOTION FOR EVIDENTIARY HEARING-
### PRODUCTION OF AUTHENTIC TAPE RECORDINGS-
### QUASH INDICTMENT/CONVICTION

Comes now the petitioner, Kenneth Rex Price, pro-se, in the above styled cause, pursuant to rule 32.9; 32.4.ALA.R.CRIM.P. and moves this Honorable Court to hold Evidentiary hearing in this cause, and order production of Authentic Tape Recordings identified as States exhibit, seven,eight, and nine regarding case numbers; CC02-136,to be presented and heard on record at said requested hearing, or in the Alternative, to Quash the indictment/ conviction with prejudice regarding CC02-134,and CC02-135,CC02-136. And in support of this motion states as follows:

RE:EVIDENTIARY HEARING:  
1.) Petitioner has submitted in conjunction with this motion, a Rule 32, petition Ala.R.Crim.P., of which petitioner believes will show to warrant an evidentiary hearing.

RE: TAPE RECORDINGS.  
2.) Said Petitioner is the result of two convictions of unlawful distribution of a controlled substance,CC02-134, CC02-136,and the evidence alleged against petitioner, was to have been recorded on tape recordings identified as States Exhibit,7,8,and 9 (R-109,Ln:19,-R-110,Ln:11.); (C-8,9,10.)

3.) Petitioner contends in said Petition(#1.above) that the
evidence is insufficient to sustain a conviction in this
case, and that the evidence used to convict petitioner
was in violation of the Fourth Amendment of the United
States Constitution, Title III, omnibus Crime Controll
and Safe Streets Act of 1968,and Title18,U.S.C. Chapter 119,
sub-section 2510,through 2522;and,
Was based on perjured testimony;and,
Was based on extraneous exposure of false facts presented
to the jury;and,
   Brady violations suppressing evidence exculpatory to
this Petitioner; Not to exclude other Grounds, but
   Of which evidence the tape recordings are alleged to
reflect, as the tapes were made at the time of the alleged
offense, and will therefore be pertinent to merit, or
frivolousness of such said Rule 32, allegations.

   <u>RE: QUASHING INDICTMENT/CONVICTION.</u>

4.) All evidence in this case was obtained during the course
of what petitioner demonstrates in Grounds Two of his Rule 32,
Petitioner statement of Fact/Brief,Illegal Eavesdropping
Instances to obtain such evidence in this case.
   This case does not reflect any warrants,orders
authorizations,etc., which is specifically and strictly
required by <u>Title 18,U.S.C.sub-section 2518</u>, including
citizens, or in this case,the informant,and therefore,
Pursuant to <u>Sub-section 2515</u>,of Title 18U.S.C. Chapter  119,
no evidence may be used in any Grand/Petit jury, trial or
hearing etc.,proceedings,which was obtained in violation
of said Title and Chapter.
   And this Chapter applies to all authorized District
Attorneys,and Law-enforcement Officers of Federal or State
capacity, see <u>T.18,U.S.C.subsection 2518.(10). chapter 119.
TitleIII,omnibus Crime Control and Safe Streets Act of 1968</u>.
   Thus as all evidence in this case was obtained in
violation of said above, The evidence is illegal, and
therefore Insufficient to have caused an indictment ,a
conviction,and

-2-

this reviewing court should take into the consideration
of these lawful facts, and violations, as well as the
petitioners Fourth Amendment Right to Privacy as these
eavesdropping instances took place within the confines
of the petitioners home, and with all due respects that
the tapes would reflect perjury occurred; and
ineffectiveness of the petitioners trial Counsel (Ground,
8,C,of rule 32.Petition) failure to defend this fact
pre-trial; and herefore, quash the Indictment and conviction
against this petitioner.

Wherefore, petitioner respectfully prays, preminise considered,
that this Honorable Court grants this motion in petitioners
favor, as Justice so fairly requires.


                    Respectfully Submitted
          On this the, __14__ , day of March, 2005 .

                    _Kenneth Price_
                    KENNETH R, PRICE_PRO-SE
                    A.I.S#150784 B-7
                    100 Warrior Lane
                    Bessemer,Alabama,
                         35023-7299


-3-

/3

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the
foregoing upon The District Attorneys Office, Post Office
Box 812, Troy Alabama, 36081, by placing said in the U.S.
Mail, postage prepaid and properly addressed, on this
the __14__ day of _March_, _2005_.

_Kenneth Price_

Kenneth R, Price  Pro-se
A.I.S.# 150784 B-7
100 Warrior Lane
Bessemer, Alabama
           35023-7299

-4-

# PETITION FOR RELIEF FROM CONVICTION OR SENTENCE

### (Pursuant to Rule 32, Alabama Rules of Criminal Procedure)

Case Number

|  | ID | YR | NUMBER |
|---|---|---|---|

IN THE _____ **CIRCUIT** _____ COURT OF ___ **PIKE CO.** ___ , ALABAMA

_____ **KENNETH REX PRICE** _____ vs. _____ **STATE** _____
Petitioner (Full Name)                                    Respondent

[Indicate either the "State" or, if filed in municipal court, the name of the "Municipality"]

Prison Number ___ **150784** ___ Place of Confinement **W.E.DONALD CORR.FAC.**

County of conviction **PIKE COUNTY**

### NOTICE: BEFORE COMPLETING THIS FORM, READ CAREFULLY THE ACCOMPANYING INSTRUCTIONS.

1. Name and location (city and county) of court which entered the judgment of conviction or sentence under attack **CIRCUIT COURT OF PIKE COUNTY ALABAMA, PIKE COUNTY COURTHOUSE,TROY ALABAMA, 36081**

2. Date of judgment of conviction **NOVEMBER 8th,2002**

3. Length of sentence **CNT#1.25YRS./ CNT#2.25-YRS.   CONSECUTIVE**

4. Nature of offense involved (all counts) **CNT#1. DISTRIBUTION OF CONTROLLED SUBSTANCE CASE NO. CC02-134.---CNT#2. DISTRIBUTION OF CONTROLLED SUBSTANCE CASE NO. CC02-136.**

5. What was your plea?   (Check one)

   (a) Guilty _____

   (b) Not guilty __x__

   (c) Not guilty by reason of mental disease or defect _____

   (d) Not guilty and not guilty by reason of mental disease or defect _____

6.  Kind of trial: (Check one)

(a)  Jury _x_                        (b)  Judge only _____

7.  Did you testify at the trial?

Yes _____                          No __x__

8.  Did you appeal from the judgment of conviction?

Yes __x__                            No _____

9.  If you did appeal, answer the following:

(a)  As to the state court to which you first appealed, give the following information:

(1)  Name of court _ALABAMA COURT OF CRIMINAL APPEALS, 300_
     _DEXTER AVE. MONTGOMERY, ALABAMA .36130-1555_

(2)  Result _AFFIRMED_

(3)  Date of result _NOVEMBER 21,2003_

(b)  If you appealed to any other court, then as to the second court to which you appealed, give the following information:

(1)  Name of court _N/A_

(2)  Result _____

(3)  Date of result _____

(c)  If you appealed to any other court, then as to the third court to which you appealed, give the following information:

(1)  Name of court _N/A_

(2)  Result _____

(3)  Date of result _____

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?

Yes __X__          No._____

11. If your answer to Question 10 was "yes", then give the following information in regard to the first such petition, application, or motion you filed:

    (a)  (1)  Name of court __CIRCUIT COURT OF PIKE CO. ALA._____

        (2)  Nature of proceeding __MOTION JUDGMENT OF ACQUITTAL/ALTERATIVE NEW__
                                  TRIAL-ARREST OF JUDGMENT.

        (3)  Grounds raised _____

             __6th AMEND.VIOLATION INEFF. ACS.CO_____

             __4th AMEND.VIOLATION,ILLEGALLY OBTAINED EVID._____

             __14th AMEND.VIOLATION,WITHHOLDING EXCULP. EVID. PERJERED__

             __TESTIMONY, INSUFF. EVID._____
             (attach additional sheets if necessary)

        (4)  Did you receive an evidentiary hearing on your petition, application, or motion?

             Yes _____          No __X__

        (5)  Result __DENIED_____

        (6)  Date of result __FEBRUARY 3,2003_____

    (b)  As to any second petition, application, or motion, give the same information:

        (1)  Name of court __CRIMINAL COURT OF APPEALS_____

        (2)  Nature of proceeding __APPLICATION FOR REHEARING.PRO.SE_____

        (3)  Grounds raised _____

              _____

             _____

             _____

             _____

             (attach additional sheets if necessary)

        (4)  Did you receive an evidentiary hearing on your petition, application, or motion?

             Yes _____          No __X__

        (5)  Result ___DENIED_____

        (6)  Date of result __DECEMBER 12,2003_____

    (c)  As to any third petition, application, or motion, give the same information (attach additional sheets giving the same information for any subsequent petitions, applications, or motions):

        (1)  Name of court _____ __ALABAMA SUPREME COURT_____

(2) Nature of proc. ling   PETITION FOR WRIT OF CERTIORARI PRS-SE

(3) Grounds raised   INNEFF. ASS. TR.CO./ILLEGALLY OBTAINED

EVID.

_____

_____

_____

(attach additional sheets if necessary)

(4) Did you receive an evidentiary hearing on your petition, application, or motion?

Yes _____          No __ X$

(5) Result ___ DENIED

(6) Date of result AUGUST 13, 2004

(d) Did you appeal to any appellate court the result of the action taken on any petition, application, or motion?

(1) First petition, etc.          Yes _____          No _ X _

(2) Second petition, etc.        Yes _____          No _ X _

(2) Third petition, etc.         Yes _____          No _ X _

**ATTACH ADDITIONAL SHEETS GIVING THE SAME INFORMATION
FOR ANY SUBSEQUENT PETITIONS, APPLICATIONS, OR MOTIONS.**

(e) If you did not appeal when you lost on any petition, application, or motion, explain briefly why you did not:

_____

_____

_____

12. Specify every ground on which you claim that you are being held unlawfully, by placing a check mark on the appropriate line(s) below and providing the required information. Include all facts. If necessary, you may attach pages stating additional grounds and the facts supporting them.

# GROUNDS OF PETITION

Listed below are the possible grounds for relief under Rule 32. Check the ground(s) that apply in your case, and follow the instruction under the ground(s):

__ X __    A.    The Constitution of the United States or of the State of Alabama requires a new trial, a new sentence proceeding, or other relief.

For your information, the following is a list of the most frequently raised claims of constitutional violation:.

4

(1)  Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.

(2)  Conviction obtained by use of coerced confession.

(3)  Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

(4)  Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

(5)  Conviction obtained by a violation of the privilege against self-incrimination.

(6)  Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(7)  Conviction obtained by a violation of the protection against double jeopardy.

(8)  Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.

(9)  Denial of effective assistance of counsel.

This list is not a complete listing of all possible constitutional violations.

If you checked this ground of relief, attach a separate sheet of paper with this ground listed at the top of the page. On this separate sheet of paper list each constitutional violation that you claim, whether or not it is one of the nine listed above, and include under it each and every fact you feel supports this claim. Be specific and give details.

———— B.  **The court was without jurisdiction to render the judgment or to impose the sentence.**

If you checked this ground or relief, attach a separate sheet of paper with this ground listed at the top of the page. On this separate sheet of paper list each and every fact you feel supports this claim. Be specific and give details.

__X__ C.  **The sentence imposed exceeds the maximum authorized by law, or is otherwise not authorized by law.**

If you checked this ground or relief, attach a separate sheet of paper with this ground listed at the top of the page. On this separate sheet of paper list each and every fact you feel supports this claim. Be specific and give details.

———— D.  **Petitioner is being held in custody after his sentence has expired.**

If you checked this ground or relief, attach a separate sheet of paper with this ground listed at the top of the page. On this separate sheet of paper list each and every fact you feel supports this claim. Be specific and give details.

__X__ E.  **Newly discovered material facts exist which require that the conviction or sentence be vacated by the court, because:**

The facts relied upon were not known by petitioner or petitioner's counsel at the time of trial or sentencing or in time to file a post-trial motion pursuant to rule 24, or in time to be included in any previous collateral proceeding, and could not have been discovered by any of those times through the exercise of reasonable diligence; and

The facts are not merely cumulative to other facts that were known; and

The facts do not merely amount to impeachment evidence; and

If the facts had been known at the time of trial or sentencing, the result would probably have been different; and

The facts establish that petitioner is innocent of the crime for which he was convicted or should not have received the sentence that he did.

If you checked this ground or relief, attach a separate sheet of paper with this ground listed at the top of the page. On this separate sheet of paper list each and every fact you feel supports this claim. Be specific and give details.

_____ F.   The petitioner failed to appeal within the prescribed time and that failure was without fault on petitioner's part.

If you checked this ground or relief, attach a separate sheet of paper with this ground listed at the top of the page. On this separate sheet of paper list each and every fact you feel supports this claim. Be specific and give details.

13.   IMPORTANT NOTICE REGARDING ADDITIONAL PETITIONS RULE 32.2(b) LIMITS YOU TO ONLY ONE PETITION IN MOST CIRCUMSTANCES. IT PROVIDES:

"Successive Petitions.  The court shall not grant relief on a second or successive petition on the same or similar grounds on behalf of the same petitioner. A second or successive petition on different grounds shall be denied unless the petitioner shows both that good cause exist why the new ground or grounds were not known or could not have been ascertained through reasonable diligence when the first petition was heard, and that failure to entertain the petition will result in a miscarriage of justice."

A.   Other than an appeal to the Alabama Court of Criminal Appeals or the Alabama Supreme Court, have you filed in state court any petition attacking this conviction or sentence?

Yes _____                     No __X__

B.   If you checked "Yes," give the following information as to earlier petition attacking this conviction or sentence:

(a)   Name of court _____

(b)   Result _____

(c)   Date of result _____
      (attach additional sheets if necessary)

C.   If you checked the "Yes" line in 13A, above, and this petition contains a different ground or grounds of relief from an earlier petition or petitions you filed, attach a separate sheet or sheets labeled: "EXPLANATION FOR NEW GROUND(S) OF RELIEF."

On the separate sheet(s) explain why "good cause exists why the new ground or grounds were not known or could not have been ascertained through reasonable diligence when the first petition was heard, and [why the] failure to entertain [this] petition will result in a miscarriage of justice."

14.   Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?

Yes _____                     No __X__

15. Give the name and address, if known, of each attorney who represented you at the following stages of the case that resulted in the judgment under attack:

(a) At preliminary hearing  JAMES N. THOMAS,L.L.C.,ATTORNEY /COUNSELOR AT LAW, 405 ELM STREET,POST OFFICE BOX 974, TROY ALA.36081-0974

(b) At arraignment and plea  JAMES N.THOMAS(15.(A) ABOVE)

(c) At trial  JAMES N. THOMAS .(15(A) ABOVE)

(d) At sentencing  JAMES N. THOMAS .(15(A)ABOVE)

(e) On appeal  PRO-SE &HON. LLOYD CARR, P.O. DRAWER 389, ELBA, ALABAMA,36323

(f) In any post-conviction proceeding  N/A

(g) On appeal from adverse ruling in a post-conviction proceeding  N/A

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?

Yes  X                    No _____

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?

Yes _____                No  X

(a) If so, give name and location of court which imposed sentence to be served in the future: _____
   N/A

(b) And give date and length of sentence to be served in the future: _____
   N/A

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?

Yes  X                    No _____

18. What date is this petition being mailed?



   Wherefore, petitioner prays that the court grant petitioner relief to which he may be entitled in this proceeding.

7

Case Number

ID    YR    NUMBER
(To be completed
by Court Clerk)

# IN FORMA PAUPERIS DECLARATION

_Pike County Circuit Court_
[Insert appropriate court]

_Kenneth Price_
(Petitioner)

vs.

_____
(Respondent(s)

## DECLARATION IN SUPPORT OF REQUEST TO PROCEED
## IN FORMA PAUPERIS

I, _Kenneth Price_ , declare that I am the petitioner in the above entitled case; that in support of my motion to proceed without being required to prepay fees, costs, or give security therefor, I state that because of my poverty I am unable to pay the costs of said proceeding or to give security therefor; that I believe I am entitled to relief.

1. Are you presently employed?    Yes _____    No ✓

   a. If the answer is "yes", state the amount of your salary or wages per month, and give the name and address of your employer.

      _____

      _____

   b. If the answer is "no", state the date of last employment and the amount of the salary and wages per month which you received.

      _____ 1994   $10.00 per hr. _____

      _____

2. Have you received within the past twelve months any money from any of the following sources?

   a. Business, profession, or other form of self-employment?

      Yes _____        No ✓

   b. Rent payments, interest, or dividends?

      Yes _____        No ✓

   c. Pensions, annuities, or life insurance payments?

      Yes _____        No ✓

   d. Gifts or inheritances?

      Yes ✓        No _____

   e. Any other sources?

      Yes _____        No ✓

2

If the answer to any of ti above is "yes", describe each source of money and state the amount received from each during the past twelve months.

$50.00 per month from my Mother

3. Do you own cash, or do you have money in a checking or savings account?

Yes _____        No ✓

(Include any funds in prison accounts.)

If the answer is "yes", state the total value of the items owned.

4. Do you own any real estate, stocks, bonds, notes, automobiles, or other valuable property (excluding ordinary household furnishings and clothing)?

Yes _____        No ✓

If the answer is "yes", describe the property and state its approximate value.

5. List the persons who are dependent upon you for support, state your relationship to those persons, and indicate how much you contribute toward their support.

NA

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.

Executed on _____
                    (Date)

                    _Kenneth Price_
                    Signature of Petitioner

## CERTIFICATE

I hereby certify that the petitioner herein has the sum of $ 46.39 Rs on account to his credit at the institution where he is confined. I further certify that petitioner likewise has the foregoing securities to his credit according to the records of said _Mr. E. Donaldson_ institution:

**COPY FOR COURT**
**ATTACHED**

_10 Mar 05_
DATE

                    _____
                    AUTHORIZED OFFICER OF INSTITUTION

Rule 32        My Commission Expires 5/31/2008

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS
W.E. DONALDSON CORR. FACILITY

IS #: 150784     NAME: PRICE, KENNY                    AS OF: 03/10/2005

| MONTH | # OF DAYS | AVG DAILY BALANCE | MONTHLY DEPOSITS |
|-------|-----------|-------------------|------------------|
| MAR   | 21        | $56.39            | $50.00           |
| APR   | 30        | $56.29            | $50.00           |
| MAY   | 31        | $70.71            | $105.00          |
| JUN   | 30        | $58.82            | $50.00           |
| JUL   | 31        | $43.39            | $50.00           |
| AUG   | 31        | $25.97            | $50.00           |
| SEP   | 30        | $14.39            | $50.00           |
| OCT   | 31        | $22.65            | $50.00           |
| NOV   | 30        | $22.65            | $50.00           |
| DEC   | 31        | $44.44            | $100.00          |
| JAN   | 31        | $28.59            | $50.00           |
| FEB   | 28        | $30.98            | $50.00           |
| MAR   | 10        | $35.69            | $50.00           |

COURT COPY

# PETITIONER'S VERIFICATION UNDER OATH SUBJECT TO PENALTY FOR PERJURY

I swear (or affirm) under penalty of perjury that the foregoing is true and correct.

Executed on ___10-25-04___
               (Date)

_Kenneth R. Price_
Signature of Petitioner

SWORN TO AND SUBSCRIBED before me this the _25_ day of _OCTOBER_ _2004_.

_James A Beachem_
Notary Public

**My Commission Expires**
9-25-2008

## OR *

## ATTORNEY'S VERIFICATION UNDER OATH SUBJECT TO PENALTY FOR PERJURY

I Swear (or affirm) under penalty of perjury that, upon information and belief, the foregoing is true and correct. Executed on _____.
                                                    (Date)

_____
Signature of Petitioner's Attorney

SWORN TO AND SUBSCRIBED before me this the _____ day of _____, _____.

_____
Notary Public

Name and address of attorney representing petitioner in this proceeding (if any)

_____

_____

_____

_____

_____

* If petitioner is represented by counsel, Rule 22 %

| State of Alabama Unified Judicial System | AFFIDAVIT OF SUBSTANTIAL HARDSHIP AND ORDER | Case Number |
|---|---|---|
| Form C-10 Page 1 of 2          Rev. 2/95 | | |

IN THE ___CIRCUIT___ COURT OF ___PIKE COUNTY___, ALABAMA
(Circuit, District, or Municipal)          (Name of County or Municipality)

STYLE OF CASE: ___KENNETH REX PRICE___ v. ___STATE OF ALABAMA___
Plaintiff(s)                                    Defendant(s)

TYPE OF PROCEEDING: _Rule 32 A.P.Crim.P_ CHARGE(s) (if applicable): _____

☐ CIVIL CASE-- I, because of substantial hardship, am unable to pay the docket fee and service fees in this case. I reque
that payment of these fees be waived initially and taxed as costs at the conclusion of the case.

☐ CIVIL CASE-- (such as paternity, support, termination of parental rights, dependency) - I am financially unable to hire a
attorney and I request that the court appoint one for me.

☐ CRIMINAL CASE-- I am financially unable to hire an attorney and request that the court appoint one for me.

☐ DELINQUENCY/NEED OF SUPERVISION-- I am financially unable to hire an attorney and request that the court appoi
one for my child/me.

## AFFIDAVIT

SECTION I.

**1. IDENTIFICATION**

Full name ___KENNETH REX PRICE___          Date of birth _11-1-58_

Spouse's full name (if married) ___PENNY Y. PRICE___

Complete home address ___4931 COUNTY Rd 3339#2. BRUNDIDGE, ALA. 36010.___

Number of people living in household ___N/A. INCARCERATED.___

Home telephone number ___N/A___

Occupation/Job ___N/A___          Length of employment ___N/A___

Driver's license number _N/A. SUSP._          *Social Security Number _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_

Employer ___N/A___          Employer's telephone number ___N/A___

Employer's address ___N/A___

**2. ASSISTANCE BENEFITS**

Do you or anyone residing in your household receive benefits from any of the following sources? (If so, please check those whic
apply.)

☐ AFDC     ☐ Food Stamps     ☐ SSI     ☐ Medicaid     ☐ Other ___N/A___

**3. INCOME/EXPENSE STATEMENT**

Monthly Gross Income:
Monthly Gross Income          $ _N/A_
Spouse's Monthly Gross Income (unless a marital offense)
Other Earnings: Commissions, Bonuses, Interest Income, etc.
Contributions from Other People Living in Household
Unemployment/Workmen's Compensation,
    Social Security, Retirements, etc.
Other Income (be specific) _____

TOTAL MONTHLY GROSS INCOME          $ _____

Monthly Expenses:
A.  Living Expenses          $ _N/A_
    Rent/Mortgage
    Total Utilities: Gas, Electricity, Water, etc.
    Food
    Clothing
    Health Care/Medical
    Insurance
    Car Payment(s)/Transportation Expenses
    Loan Payment(s)

26

# FINANCIAL STATEMENT OF INMATE'S PRISON ACCOUNT

I certify that according to the records on file in this institution, the

Figures set out below are the approximate average daily balances in the

Account of inmate _____ KENNY PRICE _____

(NAME)

for the previous six months.

Month | Balance
--- | ---

1. _____
2. _____     ed 22.78¢
3. _____
4. _____     COPY FOR COURT
5. _____     ATTACHED
6. _____

_____
Authorized Officer of the Institution

_____
Date

SWORN TO AND SUBSCRIBED BEFORE ME AND GIVEN UNDER MY HAND AND
OFFICIAL SEAL THIS 20 DAY OF October, 2004

_____
NOTARY PUBLIC

MY COMMISSION EXPIRES: 5/31/2008

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS
W.E. DONALDSON CORR. FACILITY

AIS #: 150784        NAME: PRICE, KENNY

AS OF: 10/20/2004

| MONTH | # OF DAYS | AVG DAILY BALANCE | MONTHLY DEPOSITS |
|-------|-----------|-------------------|------------------|
| OCT | 11 | $21.67 | $0.00 |
| NOV | 30 | $31.62 | $100.00 |
| DEC | 31 | $43.43 | $75.00 |
| JAN | 31 | $35.06 | $50.00 |
| FEB | 28 | $89.09 | $100.00 |
| MAR | 31 | $66.33 | $50.00 |
| APR | 30 | $56.29 | $50.00 |
| MAY | 31 | $70.71 | $105.00 |
| JUN | 30 | $58.82 | $50.00 |
| JUL | 31 | $43.39 | $50.00 |
| AUG | 31 | $25.97 | $50.00 |
| SEP | 30 | $14.39 | $50.00 |
| OCT | 20 | $29.67 | $50.00 |

COURT COPY

IN THE CIRCUIT COURT OF PIKE COUNTY ALABAMA

KENNETH R. PRICE,                          *
petitioner,                                 *
                                            *
                                            *
                                            *   CASE NO. CC02-134
                                            *              CC02-136
        VS.                                 *
                                            *
STATE OF ALABAMA                            *
    Respondent                              *
                                            *

-------------------------------------------------------------------

            RULE-32. ALA.R.CRIM. P.
                    PETITION
        ISSUE PRESENTED AND ARGUEMENT


                KENNETH REX PRICE
                A.I.S.#150784 B-7
                100 WARRIOR LANE
                BESSEMER, ALABAMA.
                    35023-7299


                    PRO-SE

IN THE CIRCUIT COURT OF PIKE COUNTY ALABAMA

KENNETH R. PRICE          *
  Petitioner              *
                          *
                          *
                          *          CASE NO. CC02-134
       VS.                *                  CC02- 136
                          *
                          *
STATE OF ALABAMA          *
  Respondent              *
                          *
                          *

CERTIFICATE OF INTERESTED PARTIES
_____

The following are the parties of interest to this case

HONORABLE,BLAIR STEVEN E.------ SENTENCING JUDGE

HONORABLE,CARR,LLOYD W. --------APPELLATE ATTORNEY

HONORABLE,HARRISON       .-------DISTRICT ATTORNEY STATE OF ALA.

HONORABLE,JARRELL,LARRY C. -----DISTRICT ATTORNEY,STATE OF ALA.

HONORABLE,McALILEY,GARY L.------TRIAL JUDGE

PRICE,KENNETH R.         -------DEFENDANT/PETITIONER

HONORABLE,THOMAS,JAMES N. ------TRIAL ATTORNEY


DATE: *March , 14 , 2005*


                    *Kenneth Price*
                    _____
                    KENNETH REX PRICE   PRO-SE
                    A.I.S.#150784  B-7
                    100 WARRIOR LANE
                    BESSEMER, ALABAMA .
                       35023-7299


(ii)

## STATEMENT REGARDING HEARING

PETITIONER RESERVES RIGHT TO HEARING IN THIS CAUSE
PURSUANT TO RULE 32.9 ALA. R. CRIM. P. ....
   Petitioner, Kenneth Rex Price, respectfully requests for
this court to set these matters down for hearing ,pursuant
to R.32.9,Ala.R.Crim.p.,issuing order to transport petitioner
from the custody of the Alabama Department of Corrections
for appointment of counsel to assist.


DATE *March , 14 , 2005*


*Kenneth Price*

KENNETH R. PRICE PRO-SE
A.I.S.#150784  B-7
100 warrior lane
BESSEMER ALABAMA.
        35023-7299

## STATEMENT OF JURISDICTION

This Honorable court has Jurisdiction over this proceeding
under Rule 32.1,(a),(b),(c),(d),(e),(1),(2),(3),(4),(5);Fifth,Sixth,
and Fourteenth Amendment of the United States Constitution
Article one,section,five,six, Constitution of the State of
Alabama,1901.

INDEX

COVER PAGE-----------------------------------------------(i)

CERTIFICATE OF INTERESTED PARTIES-----------------------(ii)

STATEMENT OF RE:HEARING --------------------------------(iii)

STATEMENT OF JURISDICTION ------------------------------(iv)

INDEX --------------------------------------------------(v)

ISSUES PRESENTED FOR REVIEW AND ARGUMENT

GROUNDS 1 :

PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHTS TO
EFFECTIVE REPRESENTATION BY COUNSEL BY VIRTUE OF HIS
COURT_APPOINTED APPELLATE LAWYERS FAILURE TO ADEQ-
UATELY RAISE ALL SIGNIFICANT AND OBVIOUS ISSUES
ON APPEAL AND PROTECT HIS CLIENTS VITAL LIBERTY
INTEREST VIA ANDERS MANDATE ----------------------------22

GROUNDS TWO :
CONVICTION WAS OBTAINED BY USE OF EVIDENCE GAINED
PURSUANT TO A VIOLATION OF THE FOURTH AMENDMENT OF
THE UNITED STATES CONSTITUTION AND RELEVANT LAW --------23

GROUNDS THREE :
THE EVIDENCE PRESENTED AT PETITIONERS TRIAL IS
ISSUFFICIENT TO SUSTAIN THE CONVICTION AGAINST
PETITIONER ---------------------------------------------33

GROUNDS FOUR :
PETITIONERS CONVICTION WAS OBTAINED BY THE PROSECUTIONS
KNOWING UNCONSTITUTIONAL USE OF PERJURED TESTIMONY -----44

GROUNDS FIVE :
CONVICTION OBTAINED BY THE UNCONSTITUTIONAL FAILURE
OF THE PROSECUTION PERFORM THEIR DUTY TO DISCLOSE
BRADY EVIDENCE TO THE PETITIONER-----------------------57

GROUNDS SIX :
CONVICTION OBTAINED DUE TO JUROR CONTAMINATION DURING
VIOR DIRE AND THROUGHOUT TRIAL OF EXTRANEOUS EXTRA RECORD
INFORMATION, JUROR CONTACT AND COERCION BY THE
TRIAL COURT --------------------------------------------66

## INDEX

GROUNDS SEVEN

PETITIONS TRIAL AND SENTENCING PROCEEDING WAS
PREJUDICED BY MULTIPLICIOUS INDICTMENT, AND
USE AT SENTENCING PHASE OF SAID JOINED WITH
MULTIPLICIOUSLY USE PRIOR CONVICTION, VIOLATED
CONSTITUTIONAL DOUBLE JEOPARDY PROVISIONS AND
CONSTITUTIONAL GUARANTEES AGAINST CRUEL AND UNUSUAL
PUNISHMENT ------------------------------------------82

GROUNDS EIGHT

PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHT
TO EFFECTIVE REPRESENTATION BY COUNSEL BY VIRTUE
OF HIS COURT-APPOINTED TRIAL LAWYERS FAILURE
TO ADEQUATELY PREPARE AND SUBTECT THE PROSECUTIONS
CASE TO MEANINGFUL ADVERSARIAL TESTING AND
PROTECT AND PRESERVE PETITIONS DUE-PROCESS
RIGHT TO A FULL AND FAIR APPELLATE REVIEW -------------92

GROUNDS NINE

PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHTS
TO CONFLICT FREE COUNSEL BY VIRTUE OF THE TRIAL
COURTS INTIMIDATING REFUSAL TO INQUIRE INTO A
KNOWN CONFLICT BETWEEN PETITIONER AND PETITIONEDS
COURT APPOINTED TRIAL ATTORNEY ------------------------123

CONCLUSION ------------------------------------------125

## GROUNDS I

PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE PRESENTATION BY COUNSEL BY VIRTUE OF HIS COURT-APPOINTED APPELLATE LAWYERS FAILURE TO ADEQUATELY RAISE ALL SIGNIFICANT AND OBVIOUS ISSUES ON APPEAL AND PROTECT HIS CLIENTS VITAL LIBERTY INTERESTS VIA ANDERS MANDATE.

A. The action taken by Appellate counsel was insufficient to amount to effective representation of counsel.

### 1.)ACTION OF COUNSEL OUTLINED

A review of the judgment roll(C-98) and complete court record which pro-se, petitioner has been in this matter, reveals that Mr. Lloyd W.Carr,(here in after known as Mr. Carr), took the following action on behalf of his client this petitioner;

### TRIAL-CLERKS-RECORDS

(i)On May 7th,2003 Mr.Lloyd W.Carr, was appointed by the trial court to represent petitioner on appeal as counsel of record. (C-82)

(ii) On May 10th,2003, Mr Carr filed notice of appearance as counsel of record, in petitioners behalf. (C-84)

(iii)On May 12th,2003,Mr. Carr, filed a motion for discovery pertaining to the petitioners case in chief.(C-85)

### DOCUMENT-EXHIBITS-HERETO

(iv) On March 16th, 2003, petitioner received notice from Mr. Carr,dated March ,10th, 2003 that Mr Carr had been appointed to represent petitioner on appeal, said notice having been sent to petitioners home address, and petitioners wife sent said notice to petitioner where so confined. (exhibit,"4"#4,exhibit thereto)

(v) On March 18th,2003 petitioner responded to the notice(iv,above)as requested, and explained to Mr. Carr his complaint(s) and requested his assistance in presenting the issues described therein for appellate review. (exhibit, "6") ;see also ,(exhibit"4"#5. and exhibit.)

(vi) On July ,14th,2003 the criminal court of appeals notified petitioner that Mr. Carr, had filed a no-merit brief, and claimed to have supplied petitioner with said brief and record on appeal, and requesting to withdraw as counsel of record.

In furtherance, said appellate order advised petitioner that he is to serve Mr. Carr and said court with a list of issues desired for appellate review. (exhibit, "4"6,7, exhibit thereto).

(vii) On July 15th, 2003 petitioner wrote and notified Mr. Carr of affiants receipt of said order, (vi. above) and requesting knowledge of a no merit brief, and requesting a copy of said brief and appellate record. Further affiant requested knowledge as to rather Mr. Carr had presented requested issues (v.above) and advising Mr. Carr that affiant would be requesting extension of time of the appellate court to present a list,(vi, above) and a motion appointment of counsel. (Exhibit "4",#8, exhibit thereto)

(viii) On July 21st. 2003 petitioner submitted motion for appointment of appellate counsel, to the criminal court of appeals for the state of Alabama.(Exhibit "4"#9, exhibit there to ).

( ix) On july, 23rd.,2003 the court of criminal appeals responded (to,vii, above) advising petitioner Lloyd W.Carr, is representing petitioner (exhibit "4"#10 , exhibit there to)

(x) On July 21st.,2003 petitioner submitted motion for extension of time to submit list of issues, (vi,vii, above) (exhibit 4#11,exhibit there to).

(xi) On July 30th, 2003 the criminal court of appeals extended petitioners time for filing said issues (vi,x, above) to august 11th,2003 (exhibit "4"#12exhibit there to).

(xii) On approximately July 28th,2003, petitioner submitted listed issues to the criminal court of appeals. (exhibit "4"#13).

(xiii)On July 30th, 2003, petitioner notified Mr. Carr, that petitioner had sent the list of issues to the criminal court of appeals and therein ,submitted a copy of said issues (xi,above)to Mr. Carr, along with request for no merit brief and records on appeal .(exhibit "4"#14 exhibit there to).

(xiv) On August 1st,2003 the Alabama Court Of Criminal appeals notified petitioner that,"Appellants prose issues" had been received/filed in the clerks office. (exhibit "4"#15 exhibit there to).

(xv) On this below signed date Mr. Carr, never responded to petitioner, in anyway and refused to talk with petitioner wife. (exhibit "4"#16).and re;(v,vii,xiii,above).

-2-

(xvi) On november 21st.2003, the Alabama Court of Crimin-
al Appeals notified petitioner of only two basic claims,
(Insufficient evidence,and Ineffective Assistance of
trial counsel alleging fourteen issues )
and advised petitioner that his claims were without merit
and therefore judgement of the trial court is affirmed.
(exhibit "4"#17,exhibit there to).

(xvii)in response to petitioner request the Alabama Court
of Criminal appeals advised petitioner that the appellee
(petitioner believing appellee being Mr. Carr) did not
file a brief in the appeal.
(exhibit "4"#18, and exhibit there to)

(xviii) On December 26th, 2003 The Alabama court of
criminal appeals, notified petitioner that his
application for rehearing had been overruled .
(exhibit "4"#19,exhibit there to ).

(xix) On December 26th. 2003, Petitioner moved the Alabama
Supreme Court for petition of writ of certiorari,
(exhibit "4"#20. exhibit there to ).

(xx) On August 13th. 2004 The Supreme Court of Alabama
notified petitioner that his petition for writ of certior-
ari was denied.
(exhibit "4"#21, exhibit there to ).

(xxi) Prior,petitioner submitted motion for judgement of
acquittal, New trial or Arrest of judgement on January,30th.
2003 (c.56).

(xxii) Petitioner requested the no merit brief filed by
Carr via. certified mail (exhibit "4"#23, exhibit there to)
and has to date heard still no response requested.

(xxiii) Petitioner purchased the no merit brief on
November 24th.2004 from the Alabama court of criminal
appeals.(exhibit "4"#24,exhibit there to ) which is
petitioners first time seeing said brief.

2.)What counsel, Mr. Carr, should have done prior to ,and during appeal, in his clients,this petitioners behalf, on the basis of information known by him.

B.)               STATEMENT OF THE FACTS

As described above,(GROUND,I.#1(i) through, (v)), Mr. Carr having been duly appointed to represent petitioner on appeal filed notice of appearance , and motion for discovery pertaining to petitioners case in chief.
 Upon petitioners notice that Mr. Carr had been appointed to him, petitioner notified Mr. Carr,via U.S. mail ,prov-iding Mr. Carr, with a detailed description of actions taken by trial counsel, prosecution, and the trial court , prior to,during ,and after petitioners trial proceeding, and at lease two documents not in the clerks records, records, yet mentioned at petitioners trial. (exhibits, 1,and 5 hereof).
 After careful diligent review of petitioners trial,and clerks record,in conjunction with the above described, Mr.Carr should have properly identified the below grounded issues here in, of which issues were significantly obvious in the face of the trial record and pointed out by petitioner to counsel .(v.above)
 However,Mr.Carr instead chose to abandon his appointed duty to protect the petitioners vital liberty interest by making the adversarial appellate process work for his client , this petitioners, and filed a no-merit (Anders) Brief,failed to contact petitioner in any way, and placed petitioner in an awkward prose position to defend on his own.
However,the appellate Record (exhibit 7,and viii,through xii;xiv;xvi;and xx,above ) will reflect that regardless of petitioners ignorance to the field and science of law; professional legal vocabulary and format(s) petitioner has made a diligent pro-se attempt to be heard and protected from unlawful actions of law enforcement, unfair trial and ineffectiveness of trial counsel, which have violated petitioners rights provided by the U.S.Constitution.
 Herefore,as described information.,required the assi-stance of Mr. Carrs professional occupation to protect his client ,this petitioners vital liberty interests in the appellate adversarial process.

ISSUES PRESENTED AND ARGUMENT.

C.

.WHETHER THE PETITIONER WAS DENIED HIS CONSTITUTIONAL
RIGHT TO EFFECTIVE REPRESENTATION OF COUNSEL BY VIRTUE
OF HIS COURT APPOINTED APPELLATE LAWYER FAILURE TO RAISE
SIGNIFICANTLY OBVIOUS ISSUES ON APPEAL.

---

The sixth amendment of the United States Constitution
right to counsel in criminal proceedings applies to states
through the Fourteenth Amendment of the United States
Constitution. Gideon V.Wainwright, 372 U.S. 335, 342, (1963)
  The right to effective assistance of counsel is a
right to the effective assistance of counsel.McMann V.
Richardson, 397 U.S.759,771,r.14(1970).
  The right to effective assistance of counsel applies to
both a retained and appointed counsel. Cuyler V. Sullivan,
466 U.S. 335,344-45 (1980).
  The due process clause of the fourteenth amendment of
the U.S. Const. guarantees the right to effective
assistance of counsel on a first.Evitts V. LUCEY
469 U.S.387,396-99 (1985). See also Mason V.Hanks,97F
30,887(7th.cir. 1996). Note that "the sixth amendment,
(U.S.Const.)entitles a criminal defendant to the effective
assist of counsel not only at trial, but during first
appeal as of rights, as a non represented appellant is unable
to protect vital liberty interests at stake, and an appellant
whose counsel is unable to provide effective representation
is no better position than one who has no counsel at
all. "note ,1, crim. Law Key 641.13.(7);U.S. Const.AMEND.
6,14. ....," and a defendant who's lawyer does not provide
him with effective assistance on direct appeal, and who
is prejudiced by the deprivation is entitled to a new
appeal."note .2. crim. Law 641.13.(7);U.S.Const.amend.6,14.
 In this instant case,as described above,petitioner was
entitled to the effective representation of his court-
appointed appellate attorney, on direct appeal from his
conviction (i,ii,iii,above.)
 However, petitioner believes that the record, and
supporting documentation herein, and significant
demonstrations below ,will reflect that Mr. Carr
abandoned his clients,this petitioners,due process right
to be represented on direct appeal,by competent,effective
assistance of appellate counsel by abandoning known
significantly obvious issues that if such had been
properly presented on appeal by Mr. Carr, would have been
more prone to have resulted in a Reversal of petitioners
conviction and /or more to have cause an acquittal/vacated
conviction, due unlawful and unconstitutional
procedures used to cause a conviction against client, this
petitioner.

I.A.5

Here fore , by Mr. Carr,instead filing a no-merit brief,
against the wishes of his client, this petitioner,
Mr.Carr there fore failed to perform his duty to assure
that the appellate adversarial process worked for his
client,this petitioner,to determine whether petitioner
was accorded a fair ,impartial ,and lawful trial, and
therefore petitioner asserts 6th. amendment (U.S.Const.)
right violation of the effective assistance of counsel
in his defense, and a violation of petitioners due
process right (14th.Amend. U.S.Const.)to direct appellate
review, and said right to counsel.

## ARGUMENT

In Mason V. Hanks,97 F.3887(7th. cir.1996 the court notes
that "When claim of ineffective assistance of counsel is
based on failure to raise viable issues on appeal,
reviewing court must determine whether appellate counsel
failed to present significant and obvious issues,
comparing significant issues which could have been raised
to those which were raised ,and only when ignored issues
are clearly stronger than those presented, will
presumption of ineffective assistance of counsel generally
be overcome". note.9.crim. Law 641.13 (7). U.S. Const.
Amend.6.

In this instant case appellate counsel "Mr.Carr" basically
raised no issues at all , however submitted a no-merit
(ANDERS) Brief, and requested to withdrawal. (vi,above).
In Anders V.California. 386 U.S.738,18 LED.2d.493,87
S.CT.1396 reh.der.388U.S.924,18L.ED.2d 1377,87 S.CT.2094
(1967) the supreme court (U.S.) held "that the
constitutional right to counsel requires that on indigent's
first appeal from his conviction, court-appointed counsel
support the appeal to the best of his ability requesting
permission to withdraw only if he finds the case to be
wholly frivolous, in which event he must file a brief

I.A.6

referring to anything in the record that might arguable support the appeal."

In this instants case petitioner contends that Mr.Carr failed to comply with the ANDERS mandate, as there were a magnitude of meritable issues warranting relief, as demonstrated in ground, II, through IX,below, and described for this issues as follows:

D.) ground two.

In ground two below, petitioner demonstrates that the evidence presented by the state in this case, in significant part, was tape recordings obtained not only in violation of petitioners fourth Amendment (U.S. Const.) right to privacy, (a right guaranteed to the petitioner through the due process clause of the 14th. Amend.Const.) but as well, in violation of all strict requirements of Title III, omnibus crime control and safe streets act of 1968, and its governing Title 18,U.S.C. Subsection 2510 through 2522, charter 119.

Not just petitioners letter to Mr.Carr, (v.above) describing such ,nor petitioners attempt to bring such matter before the trial and appellate court , (XII,XXI,above) but in the face of trial record is specifically detailed testimony of law enforcement officers describing how he'd placed an easves dropping device or an informant, sent the informant in to the petitioners privately owned home,used a repeater device and a receiving device, via radio frequency, to taperecord alleged drug transactions from within the confines of petitioners home from a quarter mile away, (R.-39,1ni. -R-, 45,1ni.11),furtherly testifies that he had chosen to take these actions, never looking for probable cause to obtain a warrant. (R-67 1ni.20,-R-68,1ni 5.)

Thus informations in the face of the trial record were sufficient enough to warrant Mr. Carr's investigation as to whether his clients fourth amendment right had been violated due no warrant or order authorizing such eaves dropping instances, invading petitioners right to privacy and unlawful search and seizure.

Certainly, Mr.Carr having been appointed to proceed appeal for petitioner, Trial Counsel, Mr.Thomas,(ground,8) is required to turn over all files pertaining to petitioner case to Mr.Carr for analysis and inspection and preservations for appellate review as required by Rule 1.16, Rules of Professional conduct.

-7-

Even if said requirement was not complied with Mr.Carr still made motion for discovery (iii,above) upon his notice of appearance of record. (ii,above).

In said motion for discovery Mr.Carr requested specifically any information relating to warrants. (C-85)

As opposed to trial counsels (Mr.Thomas) motion for discovery (ground,8,c-21) the state could not provide the petitioners trial counsel with any such warrant's orders etc., having authorized law enforcement to enter petitioner home, in violation of petitioners right to privacy ,and use an eaves dropping device, in the above described manner, for any reason.

Petitioner is unable to elaborate on the results with of Mr.Carr motion for discovery, as ,described , Mr.Carr would not consult with petitioner. (xv, above).

In addition,the trial record does not reflect that trial counsel (Mr.Thomas) ever moved the trial court at any time to suppress said evidence, for any reason, other than objecting to the admission of the tape recording derived from the eaves dropping , instances, on the grounds that prosecution failed to Lay Proper Foundation, which was overruled by the trial court . (R-151, Lni. 10-18.),and moved to suppress notes made from the tapes the night before trial, to aid testimony of the witness;(R-106,Lni.8 -R-107 Lni.:10.); (R-107, LniII-21) (Re:R-105, Ln:7,R-106 Ln:7.)

Petitioner contends that the trial and clerks Record as described above was extremely significant with respects to the petitioner's said fourth and fourteen amendment rights, and obvious enough to warrant appellate review by Mr.Carr, and certainly an issues which arguable supported appeal. ANDERS.id., however, a viable issue ignored by Mr. Carr . MASON id.

As well it is perfectly obvious within the face of the trial record that trial counsel ,(Mr.Thomas)was not effective in his representation to petitioner regarding this matter.

In Kimmelman V. Morison, 477 U.S. 365,385 (1986) the supreme court (U.S.)held that "counsel failed to conduct any pretriaL discovery,and failed to file timely suppression motion was prejudicial because unreasonable and below prevailing professional norms.

In this instant case as petitioner describes above trial counsel moved pre-trial for discovery requesting warrents, orders, affidavits

-8-

I.A.8

in relation to petitioner's case, (C-21) and after never receiving any of such through Brady request (Ground,5, above)trial counsel never made pre-trial suppression of the said evidence .

Further the court in , Northron V. Trippett, 265 F.3rd. 372,383(6th cir. 2001) noted that "counsel's failure to seek suppression of only evidence against defendant in was ineffective assistance because evidence was clearly obtained in violation of petitioners said 4th. amendment rights.

In this instant case, as petitioner demonstrates in grounds 8, E., below,all evidence against petitioner in this case, and used against petitioner in this case and used against petitioner at trial , was obtained in violation of petitioners said amendment right's.

Further, as described above, Trial Counsel discovered during trial that there was no warrant, order,etc. sought or desired by anyone during the course of an alleged investigation of this case.

The court in, U.S.Ex Rel. Henderson V. Brierly, 300 F supp. 638 (e.d.p.a.1969) noted that "trial counsel failure to object to the admission of evidence seized base on a warrant that was obtained on an insufficient affidavit constituted ineffective assistance of counsel."

In this instant case ,as described above , and below in ground two,it is more serious a violation of the fourth amendment,as there simply was no warrant, order , affidavit, desired to be sought by law- enforcement, as officer Williamson so concedes in his testimony, and trial counsel, failure to pursue illegality, and of suppression prejudged petitioner with a conviction base on illegally obtained evidence . Morrison V. Kimmelman, 650 F. Supp. 801(D.N.J.1986)

Thus ,the trial record not only revealed a compelling obvious 4th. amendment claim on appeal, but an ineffective assistance of trial counsel issue as well , simply ignored by Mr.Carr denied petitioner full and fair appellate review. Mason, id Anders. id.

E.)   GROUNDS THREE

Not to exclude that the entire context of evidence in this case was illegal as petitioner describes above and in ground two, the petitioner demonstrates in ground three below, that the evidence presented in this case is insufficient

to have satisfied the elements of the charge(s) alleged against petitioner, nor to have resulted in a conviction in this case.

Thus specifically detailed in ground three below, and obvious in the face of the trial record, that trial counsel repeatedly moved the trial court for acquittal due insufficiency of the evidence (R-171.LniII-25);(R-187,Lni 8-21); (pro-se post judgment,

c-56) was obvious to Mr.Carr, and should have warranted his professional service to protect his client, this petitioner's vital liberty interests.
Instead , Mr.Carr abandoned the insufficiency of evidence issues, and deprived petitioner full and fair appellate review which was preserved on the record, Mason id. Anders id

F.) GROUND FOUR

Further evidence presented by state in this case, in critical part, was the perjured testimony of the states key witness, confidential informant, Angela Brock, of whom was permitted by prosecution to present perjured testimony in aid of prosecutions successful attempt to exclude incriminating evidence of the said witness,of which evidence was exculpatory in nature to petitioner, and deliberately withheld by prosecution in violation of Brady V.Maryland, supra, (ground five)

Just as critical of evidence in this case, presented by the state, and more so persuasive on the jurors, was the perjured testimony of officer Bob Williamson, a deputy Sheriff and commander of the twelth JUDICIAL TASK FORCE of Pike County,Alabama, a witness for the state,of whom as well,was permitted by prosecution to present perjured testimony on the witness stand, not only in aid to Brock's perjured testimony, but to aid presecution in excluding evidence exculpating petitioner of the crimes alleged; to prejudice the jury with incriminating evidence about petitioner that does not exist, and to qualify himself as prosecutions voice expert witness.

The perjured testimony's is obvious in the face of the trial record, and specifically pointed out to appellate counsel (v. above), and no doubt violative of petitioners due process rights, as the jury's attention was diverted from the truth in this case, and from hearing all relevant facts more prone to have exculpated petitioner, certainly violative of petitioners right to a fair trial (6th. Amend. U.S. Const.) and right to confront his accuser (6th.Am. U..S.Const.) of which rights were trampled by these test-imony's, and appellate counsel's omission of this issue, (as these testimony's were the only evidence against petitioner, to have resulted in a conviction) was certainly another abandonment by Mr.Carr,of an extremely meritable issue, significantly obvious within the face of the trial record which deprived petitioner full and fair appellate review. Mason. id. Anders. id.

—10—

I.A.10

As petitioner demonstrates in Ground Four below , magnitude of case's involving perjured testimony is prohibited as should as well be in this case as said testimony's are a direct result of petitioners conviction, the only evidence against petitioner persuading the jury to determine an unfavorable verdict against petitioner and violative of petitioner said rights, of which testimony's were known to both appellate and trial counsels to be false and a duty of Mr.Carr to have pursued Ala.App. Rule 10.(9) to have defense exhibit 1 admitted to appellate Record, as preserved in the trial court .(R-122, Lni5-R-123 ,Lni 21.)


G.  GROUND FIVE.
   In conjunction with the above and below described , petitioner demonstrates in Ground Five below, Prosecution knowingly and deliberately excluded exculpatory and innocence evidence from discovery requested by defense, which was most prone to have altered the jury's verdict of not guilty.
   Exclusion of said material documents involved violated petitioners 14th. amendment right to due process, for the jury was herefore prevented from hearing all relevant facts of this case, vital to the truth of the matters involved, and instead, the excluded evidence was manipulated, and predicated by prosecution to persuade a guilty virdict.
   Petitioner presented appellate counsel, Mr. Carr, with documents pertinent to this issue and described, said events(v. above) and again, it is unknown by petitioner whether appellate counsel received any such documents in his request for discovery,(iii,above.), as Mr.Carr refused to contact this client/petitioner. (xv,above).
   However, it is well established, as described to Mr. Carr, in the trial record, that prosecution made every desperate effort to conceal the documents from defense /petitioner, as well as from the jury, in one particular instance, as described in ground five below.
   The supreme court (U.S.) in Brady V. Maryland,373U.S.83 87 (1963) held that due process (14th.Amend.U.S.Const.) requires prosecution to disclose evidence favorable to an accused upon request when such evidence is material to quilt or punishment...."In U.S. V. AGURS, 427 U.S.97, 107-11 1976 has established that the prosecutors duty under Brady, arises whether or not the defendant specifically request the favorable evidence."
   In the instant case, the record specifically reflects that prosecution withheld evidence of police memoranda which would have impeached the polices testimony,and exposed that petitioner was in jail at the time of the alleged crimes

petitioner was alleged to have committed; thus a Brady
violation in the eyes of justice. see White V. Helling,
194 F. 3rd. 937,943-45 (8th cir. 1999)

In another instance, prosecution deliberately withheld
an N.C.I.C. report of the confidential informant
which would have disclosed that the said informant was a
drug user, and had access to purchasing the same drugs
from someone else, that she alleged to have purchased
from petitioner, when the said informant testified that
she was not abusing narcotics to date, nor illegally
purchasing it. thus, a due process violation in the eyes
of the eleventh circuit as this said information would
have impeached this informant, the witness. see U.S. V.
Arnold, F.3rd. 1308,1318(11th cir,1997.)

Certainly, prosecutions bad faith efforts to suppress
evidence from defense , as when defense obtained the
evidence, defense immediately tried to present it as
exhibit 1, and prosecution again, intervened in excluding
said from the jury . U.S. V. Jackson, 780 F.2nd.1305,1311
n.4.(7th.cir 1986.) noting that "such bad faith attempt
would render the evidence material."(R.-122,123.)

Thus in all due respects, a belated Brady violation,
which late disclosure precluded defense from making
meaning full use of the evidence . U.S. V. Fisher, 106
F.3rd.622, 635( 5th. cir.1997); Ohler V. U.S., 529 U.S.
753 (2000). In this instant case however, the said evidence
was deliberately with held from discovery by prosecution
as described above, in three instances , and used in one
instance to persuade a sentence enhancement, however,
defense counsel had to obtain the discovery (N.C.I.C.) on
pro-se means.

Certainly, the trial record in this instance, reflects
foul play by prosecution in their required due process
duty, and an intentional violation of the Brady.id.,
mandate.

The trial Record , and documents reflected by the record
were significantly obvious , but again, ignored by appellate
counsel, Mr. Carr, and there depriving petitioner of
significant due process Brady violation issues, of which
had said presented on appeal, was most prone to have
warranted a reversal of petitioners conviction, and
with all due respects to a fair trial for petitioner, had said

-12-

evidence been presented at trial, an entirely different
out-come of the trial proceeding would have been most
prone, as the evidence would have reflected petitioner
innocence to the alleged crimes; and as well , most prone
as the jurors were already in doubt as to petitioners guilt,
and requesting further evidence (R-247,Lni13-21;R-250
Lni-25; R-251, Lni7, R-252, Lni:6.)

   Further, the trial record reflects  trial counsel efforts
to introduce into evidence, both document's, however,
Defense counsel never object's to the courts denial of
said attempted submission, nor objects to the prosecutions
failure to timely produce the Brady material, and once
obtained by defense counsel, counsel  failed to obtained
by defense counsel,counsel  failed to properly prepare
exhibits for admission,which if explained to the trial
court said documents were the exhibits of belated Brady,,
as well as their exculpatory nature,the evidence would
have been most prone to have been admitted under such
ground's.

   However, these failures on part of trial counsel, were
significantly obvious issues within the face of the trial
record, which expose trial counsel's failure to object,
and or otherwise, properly preserve significant issues of
ineffective assistance of trial counsel,that appellate
counsel must persue in order to perform his duty to
protect his client's,this petitioners vital liberty
insterset in the appellate court, however, in both above
described instances, Mr. Carr chose to ignore said and
omitt yet two more meritable issues from appellate review
Anders id., Mason id.

H. GROUND SIX
In ground six below, petitioner demonstrates several
instances of Jury contamination, throughout the entire
process of petitioners trial proceeding of placing before
the jury extraneous extra record information, juror
contacts, and coercesment by the trial court, which was
most prejudicial so as to impair the jury's duty to be
impartial and render their verdict based on their own
decision and from the evidence presented in this case
,rather than from improper influences imposed upon their
duties.

(13)

In one instance, the jury being unable to render a unanimous verdict, the trial court's Allen charge coerced the jury to find a "unanimous verdict", rather than to inform the jury that it was their right to fail to agree or that alone holdout was permitted by law, etc. Allen V. United States; U.S. V. Paniagua-Ramos. Supra

Further, the trial court during the said Allen charge informs the jury that the courts time is very valuable, and that he has held a Jury an entire week until unanimous verdict was reached, and would hold the jury "all day tomorrow ", and "sometime into next week"or "go into the weekend" if need be.

The following day, still unable to reach a verdict, the trial court supplements the Allen charge pursuading the jury by stating that no other jury could have more information than they , obviously a statement that "jury have convicted on less"

The trial court then invades the jurors christian beliefs with biblical statements most prone to inflame confusion and prejudices, and passions of the jurors,and responds to the juries request for more evidence, that there is none,knowing well of the excluded evidence as described in ground five above. (see ground 8 below)

Certainly, this alone in the face of the trial record was an issue warranting review as to whether the court coerced and or pressured the jury into a unanimous verdict, against their true beliefs, their true duties and issue of ineffective assistance of trial counsels failure to object to said Allen charge and preserve the issue for appellate review, again an issue appellate counsel must recognize to protect petitioners vital liberty interests in the appellate court, as this Allen charge coerced the jury into finding the petitioner guilty of crimes they sincerely believed petitioner was not guilty of, unless further evidence could persuade them other- wise. Anders. id., Mason. id.

IN yet another instance, the trial court selected the two juries at the same time , for petitioner, and Penny Lemke, lemkee, later identified as petitioners co-defendant, or involved in the same drug acts, repeatedly then and there after identified as petitioners wife and or girlfriend of whom petitioner and Lemkee, was allegedly operating

(14)

a meth lab.

certainly, the record will reflect that this was extraneous extra-record information improperly placed before the jury to successfully inflame the passion and prejudices of the jurors with evidence not admissible or before the trial court, and of which undermined defense and improperly, unduly, created a conflict with non-meritable evidence which increase petitioners propersity of committing the charge alleged.

Thus perfectly obvious in the face of the trial record containing great weight in prejudice to petitioner right to a fair trial, considering the evidence against petitioners in the case was far from overwhelming in (Ground three),and increased the prejudice durived from the courts coercive Allen charge as described above and below in Ground Six.

Moreover, this instance was significantly obvious in the face of the record, however omitted from appellate review by Mr.Carr, there by depriving petitioner of a full and fair appellate review.

Further, the trial record specifically reflects that trial counsel failed to object to said extraneous information being improperly placed before the juror's, and failed to request limiting instructions in any form, to strike the information and or to cure any taint or influences therefore, and as well , trial counsel failed to have separate jury selections ,due possible prejudice from undue accomplice/ co-defendant evidence , and or otherwise failed to preserve this issue for appellate review in anyway.

Again, an issue of ineffective assistance of trial counsel that Mr.Carr must,and should have recognized to to protect petitioners vital liberty interests in the appellate court, as thus was an inflamitory persuasion on the juries verdict which resulted in petitioners right to a fair trial, tramped with prejudice again omitted by Mr. Carr, from appellate review.Anders,id., Mason,id.

(15)

T.A.15

In another instance,during the voir dire of this case, the trial record will reflect that the trial court played a roll in exposing extraneous extra record information to the jury which roll resulted in misrepresenting material facts to the jurors that one of 48- jurors, Jackie Warrner, was the grand jury fore-person who issued the indictment in this cause, and resulted in Warrner, being selected as petitioners petit jury fore-person.

Thereafter,Warrner was spotted on several occasions with a courtroom spectator, Jennifer Senn,and a struck potential juror, Mary Senn, all during the entire course of petitioner trial.

Jennifer Senn, having a severe vendetta against petitioner, and being indicted on drug charge by the same informant as the petitioner, and alone communicating with the fore-person of the petit jury of petitioners trial warrants an investigation into this matter by the trial court for possible prejudice, as well as to whether Warrner was a member of the accusatory body of the Grand Jury.

However, the indictment's fore-person read's Lloyd Rainey, and the court singling Warrner out of 48-potential jurors, who winds up fore-person of petitioners petit jury warrants appellate review and or investigation as to whether the trial court's action were to place a personal friend on the jury to prejudice the verdict, and whether Warrner himself served on the Grand Jury, as the courts question was directed at all potential jurors but Warrner, thereby being excused by trial court from having to answer that question. (Ground six)

thus significantly obvious in the face of the trial record, should have been investigated by appellate counsel, as said reflects a conspiracy,and or , the contaminating of the jury, and an unlawful Jury selection process, and raised as an issue on appeal. However ignored and omitted by Mr. Carr. Anders, id , Mason,id.

Yet still, no objections were made by trial counsel, regarding this matter, and trial counsel knowing of Warrner being singled out per-se from 48-jurors by the trial court, and Warrners contact with the Senn's, failed to timely notify the trial court and make argument regarding said , otherwise, failing to preserve said for appellate review , again was an issue of ineffective assistance of trial counsel that Mr.Carr was entitled to and should have persued however, omitted from appellate review . Anders, id., Mason.id. (Ground 8 F. )

## I GROUND SEVEN

In ground seven A.below, petitioner demonstrates prejudices resulting from his multiplicious indictment charging three counts for one offense.

Thus,simply obvious in the face of the indictment, as well as established in the face of the trial record (R-188, Lni:  was never objected to or otherwise defended by trial counsel in any way (GROUND 8, G).

Specifically deficient performance of trial counsel which Mr. Carr must recognize in order to have thus, a significantly obvious issue recognized and reviewed by the appellate court and detrimental to petitioners due process rights; Thus,again another meritable issue ignored by Mr. Carr. Mason.id., Anders. id.

Further, In Ground Seven B.,below ,petitioner demonstrates prejudice resulting from prior conviction used multiplicosly to improperly enhance petitioner sentence.

Thus, obvious in the face of the trial record, and objected to by trial counsel as five offenses resulting in one conviction, one case number, (R-275, Lni.1,-R-279 Lni.1)

First most, both issues of multiplicousness , infected petitioners Judicial processing with prejudice so as to either cripple the trial proceeding of fairness and devert the jury's attention from the truth from the truth, or their duties; or.

Cause improper sentencing so as to subject petitioner to cruel and unusual punishment, and no effective due process or equal protection of the Law provisions.

Certainly detrimental to petitioner, and significantly obvious within the face of the trial record, yet, again, omitted and abandoned as an appellate issue by Mr. Carr.

Certainly, the sentencing issue was preserved for appeal by trial counsel, there by showing his knowledge to multiplicity status.

However, the trial record does not reflect trial counsel ever having defended the indictment being so multiplicious, again a significantly obvious issue of ineffectiveness of trial counsel that Mr.Carr. should have recognized on appeal, in both respects, however abandoned. Mason. id. Anders. id.

GROUND EIGHT-NINE.

In ground eigth below, petitioner demonstrates a magnitude of issues of ineffective assistance of trial counsel, as described above, were apparent and significantly obvious in the face of the trial record, either exposing trial counsel negligence,or simple omittions, which the Supreme Court has recognized in, Strickland V. Washington 466U.S. 687-690 (1984), as being deficient preformance below prevailing professional norms, and beyond the exceptions of hind.sight, resulting in a fundamentally unfair out come of the proceedings described here in, and certainly recognized by Supreme Court in U.S. V. Cronic, 466 U.S 659, as entirely failing to subject the prosecutions case to meaningful adversarial testing, and presumptively unreliable performance of counsel.

In Ground Nine below, petitioner demonstrates an instance where a magnitude of heated arguments between trial counsel and petitioner resulted in an irreparable breakdown of the client counsel relationship and finally erupting at sentencing before the court, where petitioner tried to explain the conflict resulting from trial counsel negligence .

However,instead of the court inquiring into the matter as it's duty to do so, the court simply cut petitioners explanation off, and intimidated petitioner into continuing with counsel, and thereby, forcing petitioner to continue with counsel impaired by conflict of trial counsels complete failure to expose evidence exculpating petitioner of the charges against him, or otherwise allow the adversarial process to justly work in petitioners behalf, against the better wishes of petitioner.

Thus, being specifically apparent in the face the record, (R-271,Lni.-R-272, Lni;16.), WARRANTING A SIXTH AMENDMENT violation of the effective representation of counsel,by the trial court,on its face.

Thus an investigation would have revealed to Mr.Carr, through the clerks record,that trial counsel had moved to withdraw as a substantial conflict existed between petitioner and trial counsel and any further representation would impair client counsel representation. (C-79.#4 pg.2) centainly an issue obviously apparent considering that Mr.Carr was appointed for appellate purposes,over withdrawl of trial counsel.

Further, it was specifically explained to appellate counsel, the nature of the conflict (V.above) and request for counsel,client  confrontation was never acknowledge. (XV,above).

The Courts in <u>Delgado V. Lewis, F3d 1148(9th. Cir. 1999)</u> held that "Appellate counsel ignored trial counsels ineffective assistance of counsel claims which were legitimate, specific and compelling appellate issues and chose to inform the court that there were no arguable issues. Appellate counsel deliberately elected to ignore the requirements of Anders, id., and ,as such deprived Delgado completely of his right to counsel on appeal.

In this instance case, petitioner demonstrates herein and above that the trial record is replete with a magnitude of legitimate, specific, compelling issues which trial counsel simply allowed to happen, or cause ,and failed to properly, adequately, or otherwise,simply object. etc. and preserve said issues for appellate review.

certainly, the grounds petitioner presents above,all deal with his rights guaranteed under the United States constitution, of which rights in this case, is apparent in the face of the record, to have been trampled by the state, and simply ignored by trial counsel, and instigated by the trial counsel actions, or, roll in such .

Further,Just as petitioner,the state and the trial court ,as well as Law enforcement officers,must obey the law statutes of Alabama, and appropriate/ relevant United States Laws, statutes, codes as well as all rules of court evidence,and said laws, codes and statutes, when obtaining evidence, and when causing a just conviction; and no rule, statute, code, etc., of Alabama, or the United States, can trump the due process clause of the United States constitution, in gaining a conviction.

In this instant case, a demonstrated above, the state and Law enforcement,has over stepped the boundaries of their limited position, and violated the constitution, laws,statutes,codes and rules, of which they must pursue in order to obtain a conviction against this petitioner, even to go as far as to exclude and predicate evidence and commit or subordinate perjured testimony at petitioners trial proceeding,knowing there was no evidence to convict this petitioner, for a crime petitioner has not committed, as record will support, the petitioner is in fact innocent, and would not have been convicted had it not been for the deprivations of petitioners constitutional rights which is to include the deprivation of the right to competent counsel, by his on counsel.

However, thus , as demonstrated below,is very much the case

at bar, and significantly obvious in the face of the trial record.

Certainly, having satisfied Mason,id.,that appellate counsel in fact, omitted significantly obvious issues on appeal, which would have caused a reversal, according to Supreme , etc. court case's supra,or rather,ignored said issues,ineffectiveness of appellate counsel should be presumed, devastatingly deficient in this case, as Mr. Carr, (appellate counsel) simply filed a no merit brief.(vi.above).

In furtherance to Mason,id. the court held that, "Appellate counsels omissions, without legitimate strategic purpose, of significant and obvious issues, will be deemed deficient, and when omitted issues may have resulted in reversal of conviction or order for new trial, lack of effective assistance will be deemed prejudicial "Id. at 887. crim. law- 641.13.(7). U.S. Const.Amend.6.

In this instant case, with respect to the two prong test of Strickland V. Washington. 466 U.S. 688-89(1984). Petitioner does not believe that this or any other court reviewing this case would render Mr.Carr"s representation to have been sound strategy, but completely deficient, and extremely prejudicial, as Mr. Carr made absolutely no effort to preserve the record for appeal, but simply abandoned issues that were more prone to be reversed for new trial, and strong possibilities of vacated conviction by simply declaring a no merit brief, and making no elaborations on any "possible" issues, which were perfectly obvious, as described above, and demonstrated below, a requirement, man.dated by Anders.id.

Thus, certainly,a meritable assertion of a sixth amendment violation of the United States constitution, to the effective assistance of counsel on appeal.

Further, The Anders man.date, id., requiring Appellate counsel to simply "file a brief referring to anything in the record that might arguable support the appeal," as demonstrated above, was simply not complied with, and deprived petitioner completely of his right to a full and fair appellate review. Delgado id., Mason. id.

In Delgado, Id. at 168, F3d.1148, The appellate brief filed on Delgdos behalf, failed to draw attention to anything in the record that might arguable support the appeal, and the court rendered such failure left Delgado constructively with out counsel on direct appeal".....

the court in Delgado, further render that "The Strickland

—20—

and harmless error standard's are not appellate counsel fails to raise any arguable issues in appellants brief, and prejudice is presumed. Id. at 181 F.3d 1087.

See also Allen V. U.S.,938 F.2d 644,(1991) noting that appellate counsels failure to meet the requirements of Anders, V. California, 386. U.S., 738,18L.Ed.2d 493, 87S.ct. 1396 Reh. denied.388 U.S.,924,18Led 2d. 1377, 87 S.ct.2094(1967) is presumptively prejudicial and therefore need not be measured by the Strickland standard. See also Evans V. Clarke, 868 F.2d 267 8th. cir (1989):

In this instant case, it is just the same, petitioners demonstrations below, points out well over eight instances that warrant appellate review and relief, ignored by Mr. Carr, in violation of the Anders man.date and constructively denied petitioner his right to counsel on direct appeal.

In persuasion of the merit of the below demonstrative issues, and the said violation of the Anders man.date, the court in, Lofton V.Whitley, 905 F2d 855 (5th. Cir. 1990) held that "Appellate Counsel who filed a two-page brief, requesting review of the record for errors, failed to follow the Anders procedure for withdrawl,and constituted ineffective assistance of counsel, where defendant raised one claim warranting habeas relief, by asserting that he had been illegally detained while police took a photograph that was later used in photograph array. ( a 4th, amendment violation.)

In this instant case, as petitioner demonstrates below, each ground contains claims which carries as much or more serious weight in violation of all respects of constitutional guarantees.

As well, Mr Carr, (appellate counsel), files not even a half page no merit brief declaring after diligent research of facts and applicable Law in this case, finds no arguable issues on its merits. (Exhibit "6".) abandoning the below demonstrated grounds.

In Allen V. U.S.,938 f.2d, 644 (6th Cir 1991), THE COURT held that, Reinstatement of appeal is appropriate remedy of ineffective assistance of appellate counsel, where counsel failed to litigate defendants claim.

In this instant case, petitioner made an attempt to bring the below demonstrated before the trial and appellate courts(c-79;exhibit "6")

even giving Mr. Car, a precise description of the facts herein complained of.(v.above) and to date, the only response, was of the no merit brief being filed of the appellate court. (vi, above)

The Anders court id., has held that,"it is up to the unprofessional, defendant, and not the professional, as to what issues will be raised on appeal".

In this instance case, it is the unprofessional, this petitioner who has made the only effort to protect his vital liberty interests, and maintain preservation of his innocence, which the evidence, excluded, and presented in this case, reflects .

And it is the professional, Mr.Carr, who has denied petitioner his rights to effective assistance of counsel on appeal, and appointment of counsel on appeal by the appellate court, which is warranted in this cause.

Herefore, it is the respectful request of this petitioner that the order and judgment of this court, be to reverse this case for trial anew, or appeal anew; or after careful consideration, and liberal constructive observation of the below demonstrated, order this conviction vacated on lack of evidence, and reflection of petitioners innocence.

6

## GROUND II

THE CONVICTION WAS OBTAINED BY USE OF EVIDENCE GAINED PURSUANT TO A VIOLATION OF THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION,AND RELEVANT LAW

A.                    STATEMENT OF THE FACTS.

On an unidentified date, in the early months of 2001, Angela Brock, a confidential informant of this case, (Hereinafter known as Brock) was arrested in Crenshaw County, Alabama, on drug charge, for    To wit: Methamphetamine and marijuana, (R-119, Lni:25,-R-122, Lni:4.)

on the sixth day of september, 2001, Brock signed a contract with the twelth Judicial Task Force, of Pike County, Alabama, supervised by Deputy Sheriff,and commander of the tewlth Judicial Task Force,Bob Williamson, (hereinafter known as Williamson) agreeing to work with Williamson and his said division, as a confidential informant, to help Williamson cause six drug indictments and convictions, in trade to expunge facing said criminal charges in Crenshaw county. (R-57,Lni:17,-R-58, Lni:21;):(R-126,Lni:16-R-128,Lni:15.) (contract ex. 1)

As part of an assignment, Brock was to enter petitioner home, and purchase methamphetamine from petitioners fiancee "Penny", or in alternate, from the petitioner. (R-39-45)

Brock therefore enter the petitioners home on approximately the 16th. day of September, 2001, with an eavesdropping device attached to her person, by Williamson, which eavesdropping device transmitted conversations from within the confines of the petitioners privately owned home, to a repeater device placed in Brocks truck, by Williamson, which repeater device amplified said conversations via Radio Frequency, to a receiving device in the possession of Williamson, who was observing said conversation in his vehicle on a deserted logging road, approximately one quarter mile from petitioners home. (R-103, Lni:5,-R-105,Lni:10.)

Thereafter, on the 18th day of September, 2001, Brock and Williamson again, performed the same identical eavesdropping technique as described above, transmitting conversations from within the confines of the petitioners privately owned home yet in addition, williamson was tape recording said conversations from these eavesdropping devises, which conversation were alleged to be drug transactions between a female voice alleged to be Brock purchasing a controlled substance    To Wit:Methamphetamine from a male voice alleged to be the petitioner (R-39, Lni:3-R-44, Lni:23),(R-97,-R-100,Lni:16.)

On both the 19th, and 20th, day of September, 2001, Brock and Williamson performed the same identical eaves dropping /recording techniques as described above, in search for the same information, as sought on the 18th, day of September, 2001. (R-39,Lni:3,-R-44,Lni:23);(R-97,Lni: 16 R-100,Lni:16.) after having received $50.00 U.S. currency from "Bob"Williamson.(R-99;Lni21,-R-100,Lni:3.)

Although Williamson only had audio contact with Brock during these incidents,id., Brock returned to Williamson on each occasion (18th, 19th.,20th,) with an animal blood vail of drugs allegedly purchased by Brock from petitioner (R-100,Lni,-R-103,Lni:3.) and later identified as vials of methamphetamine. (R- 135, Lni11,-R-142, Lni 6.)(1 vial, RE:18th ,0.15 grams,states exhibit# "1"; 1-vial, RE:19th, 0.23 grams, states exhibit #"2"; 1 vial, RE:20th 0.40 grams, states exhibit # "3".,R-142,Lni:23.)

The tape recordings obtained by mean of , of the above mentioned eaves dropping techniques were later indentified as: Tape; RE:18th, states exhibit #7; Tape,RE:19th, states exhibit 38; Tape RE:20th, states exhibit # 9, R-150, Lni13, R_151, Lni:18.)

In addition to evidence obtained by means of the aboved mention eaves dropping techniques, and used as evidences by the state at petitioner trial proceeding, was the testimony of Brock,of whom testified from notes made the year old tapes, the night before trial, alleging to have purchased said vials of methamphetamine from petitioner during the course of said eaves dropping instances. (R-103 Lni:6,-R-118,Lni22: pertinent portion R-118, Lni16-22)

Not only was the aforementioned used as evidence against petitioner at his trial November 7th ,8th,2002 trial proceeding, (R-1A).But used to cause the Grand Jury Of Pike County Alabama, March 2002 term. to issues an indictment alleged petitioner in violation of three counts of unlawful distribution of a controlled substance, in violation of 13A-12-211, code of Alabama. (C-37) of which petitioner pleas not guilty (R-4,LNI25,-R-7,Lni23.), however render guilty on twenty five years on each count to run consecutively.(R-292, Ln:24,-R-293, Ln:11.)

The record in this case, reflects no lawful authorization, warrant, order, etc., (C-21,C-32,C-28, C-85.) however Williamson testified that he was not searching for probable cause, nor to obtain a warrant(R-67,Ln:20-R-68, Ln:5;R-87.)

ISSUES PRESENTED AND ARGUMENT.
B. WHETHER PETITIONERS CONVICTION WAS OBTAINED BY THE
   USE OF ILLEGALLY OBTAINED EVIDENCE INVIOLATITION
OF THE FOURTH AMENDMENT OF THE UNITED STATES
CONSTITUTION AND LAWS STATUTES AND CODES OF
ALABAMA AND THE UNITED STATES.

_____

The 4th. Amendment of the United States Constitution
specifically provides as follows:
    "The right of the people to be secure in their persons
houses, papers, and effects against unreasonable searches
and seizures shall not be violated, and warrant shall
issue but upon probable cause, supported by oath or
affirmation, and particularly describing the place to be
searched, and the person or thing to be seized,".
    Petitioner contents that the above described actions of
Williamson and Brock, violated petitioners of said 4th
amendment rights (U.S.Const.)as there were no probable
cause, supporting oaths or affirmation nor warrants,
orders etc.,sought, or issued, permitting the invasion of
the petitioners privately owned home,and his right to
privacy in that home, as so described above.
    Further, petitioner contends that actions of Brock and
Williamson was in violation of laws, statutes, and codes
provided by the State of Alabama, and the United States,
and article II, of the Code Of Alabama, 1975 which
prohibited the above described obtained evidence to be
used to indict, trie,and convict the petitioner, as
follows:

    Alabama Code 1975, subsection 13A-11-30, through 13A-11-
37; Title 18. U.S.C. chapter 119, subsection 2518, etc.
and adjoining, Title, III, omnibus Crime Controll and safe
streets Act of 1968,all provide procedures for law
enforcement officers to strictly follow, for obtaining
authorization of the use of electronic surveilance and
eaves dropping devices in public, private, and business
places, thus , includes private citizens T.18 U.S.C.S 2511
(2)(a)(ii). If law enforcement officers do not follow such
protocol provided by said codes,titles etc., then the

14th. amendment (U.A.Const.) has been violated, and makes the said violations a serious crime.

The state may contend that Williamson (Task Force Agent) had probable cause to cause this surveillance of eaves dropping during a domestic dispute incident by responding Deputies, approximately one month after Brock purchased drugs from petitioner on the 18th. 19th.20th.incidents, where he then noticed chemical paraphernalia to make drugs (R.51, Ln:3-R-5,Ln:17.) (R-109,-R-110.)

Specifically, this would be probable cause discovered after the facts of the 18th.,19th.,20th. in question, and does not excuse the unlawful eaves dropping instances.

Further , as petitioner demonstrates in grounds 3, below the domestic incident took place on the 19th. of September 2001, where petitioner was arrested at approximately 0700 hours, on a harassment charge, and released the following Sunday, September 23rd.,2001, and not available for the 19th.,and 20th. alleged distributions. (see ground 3,); see also, (exhibit-2).

Title III, Omnibus Crime Control and Safe Streets Act of 1968, 18.U.S.C.Subsection 2510 et seq., provides a general rule which permits official eaves dropping and wire tapping only upon the showing of probable cause, and a warrant/order, see:Alderman Vs. U.S.,394 U.S. 165 (1969)

In this instant case, there simply was no probable cause The above described statutes, protests the privacy of wire and oral communications and establishes uniform standards for Judicial authorization of invasion of that privacy.

Title III, of the Omnibus Crime Control and Safe Streets Act of 1968,18.U.S.C. subsection 2516(2) provides that upon application by the principle prosecuting attorney of a state or political subdivision thereof, a state judge , " May grant in conformity with subsection 2518of 18.U.S.C. alongwith applicable state statutes" an order authorizing interception of wire or authorizing the interception of oral communications to obtain evidence of certain offenses section 2516(2), id., requires that states statutes authorizing the interception by law enforcement officials of wire or oral communications, must contain minimal safe guards in conformity with subsection 2518, of T.18 .U.S.C., against intrusion upon rights protected by the fourth amendment. (U.S.Const.)

The state statutes must conform to the federal act with regard to the procedures for obtaining a valid warrant/order, and if it does not, the order would be unlawful even though authorized by state law. U.S. V. Tortorello, 480 F. 2d. 764 (1973)

The federal act does not authorize a state judge to issue a wire tapp or eavesdropping order upon application of a state officer.

If an order by a state judge is not in compliance with Title III, id., any evidence obtained as a result, may be successfully suppressed pursuant to Title 18. U.S.C. subsection 2518 (10).

Title 18.U.S.C. subsection 2518(1)(c) of Title III, chapter 119. U.S.C., requires that an application contain a statement as to whether other investigative procedures have been attempted, or why they would be to dangerous.

Before authorizing surveillance, the judge must determine that such other procedures have failed or would fail, or would be to dangerous.

More over, in order to minimize the secretiveness, of the surveillance, T.18.U.S.C. subsection 2518 (8)(d) requires the recording of all intercepted communications the preservation of them, by the judge, and notice by the judge to the person's named in the order, and no event, notice not later than ninty (90) days.

In this instant case, there were simply no applications affidavits, or etc., sought to obtain an eaves dropping order, warrant, nor were there any such lawful authorizations to invade the privacy of the petitioners home with an eavesdropping device, nor to search , nor seize any property, persons, substance, at any point in this specified time, until a warrant was issued for petitioners arrest, based on the above described evidence. (all of which identified above).

The tape recording's in this case,was never turn over to the court/ judge , but was kept in Williamson's file cabinet under preserved, (R-45, Ln:12,-R-46,Ln:1) and observed by Williamson and Brock the night before trial. (R-48,Ln:4-9).

Further, the trial court never gave petitioner notice that an eaves dropping device had been used in his home and tape recording had been recorded there from, within the required ninty (90) days.

Petitioner became aware when defenses motion for discovery was returned on, May 10th,2002, identifying "Audio Tapes". (C-32,-36, pg.#4).

Thus a notice then discovered Two hundred thirty four (234) days after the September 18th,19th, and 20th, 2001, eaves dropping instances,and one hundred fourty four,(144) days beyond the courts required ninety (90)days to have notified petitioner that said Audio Tapes existed.

Title 18,U.S.C. Subsection 2511 (1)(a)(i)(ii)(v)and (c), provides as follows: ... (1)(a) Except as otherwise specifically provided in this chapter, any person who, Intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire ,oral or electronic communications;.....(b) intentionally uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication when,.... (i) such device if affixed to, or otherwise transmits a signal through a wire, cable, or other like connection use of wire communication,or ....(ii), such device transmits communication....(v) such person acts....in a territory or possession of the United States.... and, (c), intentionally discloses or endeavors to disclose, to any other person the content of any wire,oral or electronic communications, knowing or having reason to know that the information was obtained through the interception of a wire, oral,or electronic communication in violation of this subsection,... shall be punished as provided in subsection (4), or shall be subject to suit as provided in subsection (5).  (Note: T.18,U.S.C.subsection 2511, Interception and Disclosure of wire, oral, or electronic communications prohibited: Prohibits unlawful such conduct.); (2511,(1) (a),(b),(i),(ii),(v),(c),applies to this case/ issues.)

Just as 18 .U.S.C. 2511, (1)(b),(i),and (ii); Alabama Code 1975s 13A-11-30,(1), defines eaves dropping as to : Overheard ,record, amplifies or transmits any part of the private communication of others without the consent of at least one of the persons engaged in communications except as otherwise provided by law; and,

(2)" Private place ", is defined as a place to which the public or a substantial group of the public has access."

In this instant case, as described above, the eavesdropping device was used in the petitioners privately owned modular mobile home,

located on petitioners privately owned plate of land.

The Fourth Amendment (U.S.Const) protects person private conversations, as well as his private premise, and the rights of the owner of the premises are clearly invaded when the police enter and installed a listening device in his house, as they are when the entry is made to undertake a warrant less search for tangible property. Alderman V. U.S.165 (1969), See also: Remie V. U.S. City of Headwig Texas, 765 F2O 490 (5th. cir. 1985); Whaien V. Roe, 429 U.S. 589, 51 LEd 2d 64, 97 S.ct. 869 (1977), Noting that the constitution of the United States Protects individuals against invasion of their privacy by the government. (4th. Amend. U.S. Const.)

Petitioner does not aver that Brock, (informant) as one of the parties involved in the conversation, consented to the eaves dropping act, under contract with the task force as described above.

However, the court in Truckins. Exchange V. Ashland Oil Inc.,951 F2d 787 (7th cir 1992) Note that, "contracts are against public policy if they execute incentives to commit acts that society has made illegal or of which society disapproves".

In this instant case, Brock participated in a series of crimes with Williamson during the course of the aboved described eavesdropping instances, according to Alabama Code Provisions, To Wit:

Alabama Code 1975 , subsection 13A-11-36, provides defenses to criminal eaves dropping crimes which states in pertinent part, (a)" A person dose not commit a crime under this article if :

(i) He was a peace officer engaged in the lawful performance of his duties; or

(iii)  He relies in good faith on a lawful court order or legislative authorization.

Alabama code 1975, subsecton 13A-11-36, is a subsecton under Article 2. OFFENSES AGAINST PRIVACY.

Subsection (a)(1), governs Law enforcement activity, and subsection(a) (iii) protects law enforcement who relies in good faith on lawful court orders....

...(a)(i) requires that a law enforcement officer was eaves dropping in the lawful performance of his duties; and whether his action were lawful brings into play ,Title III, omnibus crime control and safe street act of 1968, 18.U.S.C. subsection 2510.et.seq., which makes unlawful surveillance a serious crime

The general rule under the statute is that official eaves dropping and wiretapping are permitted only with probable cause and a warrant (order). Alderman V. U.S. id. supra.

Again as demonstrated above no warrant were obtained, no probable cause existed, and Williamson testified that he had no desire to "search for probable cause", there by an admission ny Williamson of falling to act in the required and strict compliance of the above mentioned Titles, codes, statutes, and constitution of the United States, yet instead, to act in an intentional reckless disregard for the laws, codes, statutes, of the State of Alabama, and even more so damaging in this instant case for petitioners 4th. Amendment of the United State constitutional rights against the invasion petitioner privacy. Alderman V. U.S. supra.

Subsection (a),(iii) of 13A-11-36, here fore, does not protect Williamson as he was acting in bad faith and again, without a lawful court order .

In the contract Brock signed by Brock, with the Twelth Judicial Task Force, hence, Williamson, (exhibit 1) Brock agreed that she has no official police power, (see#1, thereof); that she agrees to utilize her service to the Drug Task Force (DTF) to make a "controlled" purchase of a controlled substance, and audio/ video tape such purchase,(#7, thereof,)and that the contract does not afford her any special privileges or immunities from prosecution for violations of Criminal Laws , including those regarding possession,use or sale of controlled substance made after the date of the contract, (#6 thereof)

A"controlled purchase", in this respect, would be a purchase of a controlled substance, authorized by Law.

Here, in this case, there was no Order Warrant, authorizing Williamson to control a purchase of a controlled substance or any authorization giving any description to Lawfully allow Brock to enter upon petitioners Land and invade his privacy for any purpose , and therefore, Brocks consent has or controlling effect in this case, with respects to the judicial interpretation of 13A-11-36 (1) "except as otherwise provided by Law ," and 13A-11-36 (a)(1), engaging in the Lawful performance of his duties. Alderman V.U.S. supra; T18 U.S.C.s 2511 (2) (a) (ii).

When considering that Brock and Williamson, basically Freelanced there eavesdropping, as described above, in violation of Title III, Omnibus Crime Control and Safe Streets Act of 1968, T 18 U.S.C. subsection 2510 et.seq. chapter 119; and a magnitude of Alabama code 1975, Article 2, Article 7, Article 5, Division(s) 1,2.; Alabama Constitution 1901. subsection five(5) (right to privacy) and the 4th Amendment of the United States Constitution, the consent issue should Lawfully be invalid in respect, as well as petitioners home was private, and not Brocks resident.

Title 18 U.S.C.subsection 2515, chapter 119, PROHIBITION OF USE AS EVIDENCE OF INTERCEPTED WIRE ORAL COMMUNICATIONS.

This subsection (2515) controls violations of chapter 119 of Title 18 U.S.C. and Title III.omnibus crime control and safe streets act of 1968, and provides as follows:

"When any wire or oral communication has been intercepted no part of the contents of such communications, and no evidence derived there from may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department,officer agency, regulatory body, legislative committee,or authority of the United States,a state,or a political subdivision thereof,if the disclosure of that information would be in violation of this chapter. (Added. Pub. L.90-351 Title III subsection 802, June 19th, 1968,82 Stat. 216.)

In this instant case, petitioner believes he has shown to this court, a concise demonstration that said . Titles have been violated, not to exclude other above described rights and provisions infringed upon.

As described above, Three vials of methanphetamine was alleged to have been purchased from petitioner, during the course of the unlawful eavesdropping instances; and used as evidence in this Grand jury,petit jury proceedings identified as exhibits 1,2,3, and forensic lab reports pertaining there to, identified as exhibits 4,5,6, in this case .

Three tape recordings were obtained during the course of the unlawful eaves dropping instances, and used and/or introduced as evidence in this Grand and petit

jury proceeding, identified as exhibits,7,8,9.
Also evidence presented by the state in this case and
obtained during the course of the unlawful eavesdropping
instances, was the testimony of Angela Brock, (R-97), Bob
Williamson (R-36) Leslie Hussey (R-90) And Mike Benak,
(R-135),all testimony's/ evidence, referring to or
describing the above described unlawful eavesdropping
instances, including notes (R-105) .

   All of which said evidence, with respects to justice
and equal protection/ due process of the law, (14th.Amend.)
U.S. Const.)should be construed as prohibited at petitioners
trial proceeding, Grand Jury proceeding, and Herefore
prohibited to sustain the petitioners present conviction
based on such evidence, pursuant to T. 18 U.S.C.s2515.
see Mapp. V. Ohio, 367 U.S.643-655(1961), ruling that,
"The use of evidence, in violation of the fourth
Amendment of the United States Constitution in states
courts is barred: and, Grand Jury V. Gassirro, 918 F 2d
1013,1014. note 1. (11th. cir. (1984) noting that , "Grand
Jury may not bear evidence obtained by electronic
surveillance in violation of the Fourth Amendment of the
United States, Constitution .

   Specifically,the state relied on informant Brocks
testimony to support the tape recordings,vice versa;
however , as Brocks testimony was regarding the alleged
transactions being recorded at the time of eavesdropping
instances described herein.

   As petitioner demonstrates below in Ground 3, Brocks
testimony exaggerates more than what the tapes reflects
and herefore, the weight of the evidence in this cause,
is also in question, not only for these reasons, but in
part,as petitioner demonstrates in Ground 4 below, Brocks
as well as Williamson perjury themselves on the witness
stand, which raised, in part, and for this cause, the
question as to whether the credibility of the witnesses
should be in question, when considering the probative
value of rendering in favor of the petitioner, of which
should out weigh any prejudice to the state, in all
instances of this cause, and issues herein.

   Certainty, the actions of informant Brock and officer
Williamson, as described/demonstrated above, was in violation

of pertinently every Title,code,statutes,act,and constitutional protected provision that petitioner is entitled or guaranteed by, and said actions of Brock, Williamson and et al, illustrates a Hallmark Intentional pattern of compulsive reckless disregard for not only their oaths of law enforcement, but for the laws strict requirements as demonstrated above, and the judicial process, and petitioners said entailing rights.

And for the afore mentioned reasons, the evidence in relation to this case, as demonstrated above, is due to be rightfully construed as illegal therefore, and prohibited as evidence to sustain the present conviction against this petitioner.

GROUND III

THE EVIDENCE PRESENTED AT PETITIONERS TRIAL IS INSUFFICIENT TO SUSTAIN THE CONVICTION AGAINST PETITIONER

STATEMENT OF THE FACTS.

A.

The petitioner was alleged to have sold an informant, Brock, (hereinafter known as "Brock")three vials of methamphetamine, a controlled substance on the 18th,19th, 20th,of September, 2001, at specified times of said dates and during the course of Brock's said purchases, from petitioner, Brock was wearing an eavesdropping device, transferring the conversations during the course of said transactions, through a repeater device placed in Brock's truck, which amplified said conversations to a receiving device in the possession of Duty Sheriff, Bob Williamson (hereinafter know as "Williamson") whom was recording said conversations on to a cassette tape, via. tape recorder.

The purchases contained ($50.00) fifty dollars U.S. currency,and three animal blood vials of metamphetamine as analyzed by the Department of Forensic Science, per Mike Benak.

The petitioner herefore, was indicted on three (3)seperate counts of unlawful distribution of a controlled substance To Wit: methamphetamine, in violation of 13A-12-211, Code Alabama, (C-11); (R-266,Ln:2,-R-277,Ln: 12)

Petitioner was therefore tried on November 7th, 8th.2002 in the circuit court of Pike County Alabama, and found guilty on two (2) of the three (3) counts. (R-252, Ln:23,-R-258,Ln:7) of which said offenses consisted of the same evidence, to wit as follows:

B.        <u>SUMMARY OF</u> EVIDENCE AND DISCOVERY

The following evidence relied on and requested by the State is presented for resolution and review in this cause

(A.) STATES DISCOVERY REQUEST FOR VOICE EXEMPLAR.(C-132)
(B.) STATES DISCOVERY REQUEST FOR PETITIONERS FINGERPRINTS.(132)
(C.) STATES EXHIBIT #1...1,blood vial containing 0.15 grams a controlled substance, methamphetamine. Purchased at 0000 Hours on the 18th. day of September,2001,(r-139)
(D.) STATES EXHIBIT #2...1-blood vial containing 0.23Grams of a controlled substance. Methamphetamine. purchased at 0000 Hours on the 19th. day of September,2001.(R-140)
(E.) STATES EXHIBIT #3...1_blood vial containing 0.40 grams of a controlled substance, methamphetamine. purchased at 0000 Hours on the 20th. of September,2001. (R-141).
(F.) STATES EXHIBIT#4...1_chemist report (A.D.F.S.)Re:Exhibit-1.(R-140).
(G.) STATES EXHIBIT#5...1-chemist report(A.D.F.S.) Re:Exhibit-2 (R-140)
(H.) STATES EXHIBIT#6...1-chemist report (A.D.F.S.) Re:exhibit-3.(R-141)
(I.) STATES EXHIBIT #7...1cassette tape recording , Re:9-18-01.(R-150).
(J.) STATES EXHIBIT # 8...1 cassette tape recording, Re:9-19-01.(R.150)
(K.) STATES EXHIBIT #9...1 cassette tape recording, Re:9-20-01.(R-150)
(L.) STATES KEY WITNESS TESTIMONY, ANGELA BROCK; a confidential informant testifying that she had allegedly purchased States exhibits, 1,2,3,(vials of methamphetamine) from petitioner on the 18th, 19th., 20th,day of September 2001, during the time being made , via,an eaves dropping device attached to her person, and purchased with Fifty dollars U.S. currency provided by Williamson. (m.below).

-34-

(M.) STATES WITNESS, BOB WILIAMSON, a Deputy Sheriff, and Commander of the Twelth judicial Task Force, of Pike County Alabama, HENCE: STATES VOICE EXPERT WITNESS.

Williamson testifies of his assistance in Brocks actions (L.above ) regarding his part in obtaining STATES exhibits- 1, through -9, above,and other alleged matter regarding petitioner to qualify as a voice expert.(R-36)

(N.) STATES WITNESS, MIKE BENAK, a lab technician for the (A.D.F.S.) Alabama Department of Forensic Science, testifying as to his duties regarding States exhibits 1, through ,6 above and his qualifications.(R-135).

(O.) STATES WITNESS, LESLIE HUSSEY, a Deputy Sheriff of Elba Alabama, testifying as a search witness, to the search(s) of Brock. (R-90)


### ISSUE PRESENTED AND ARGUMENT.

C.

WHETHER THE EVIDENCE PRESENTED BY THE STATE IS SUFFICIENT TO SUSTAIN CONVICTION AGAINST THE PETITIONER IN THIS CASE

Not excluding that the entire context of the above described evidence . (A). through (O).above ,was illegally obtained, however, in support of Ground II, above, petitioner demonstrates that said evidence was insufficient to have satisfied the elements of the alleged charges against petitioners, and therefore to have resulted in petitioners being convicted and receiving two (25) twenty-five year sentences running consecutively.

The United States Supreme Court, in Hamling V. U.S., 418 U.S. 87,41 LEd 2d 590, 94 sct. 2887 (1974); Glasser V. U.S.,315 U.S. 60,86 LEd 680,62 sct 457(1942) note, that "When reviewing the sufficiency of evidence to support a guilty verdict, the evidence, and all reasonable inferences there from, is viewed in the light most favorable to the Government.

As described above, Petitioner was alleged to have been in violation of <u>13A-12-211, Alabama Code, UNLAWFUL DISTRIBUTION OF A CONTROLLED SUBSTANCE</u>, which provides as follows:

"A person commits the crime of unlawful distribution of a controlled substance ,if he sells, furnishes, gives away, manufactures, delivers,or distributes a controlled substance enumerated in schedules one through four of the uniform controlled substance schedules"

Specifically, from the language of 13A-12-211, the states allegations is that the petitioner is charged with "unlawful distribution of a controlled substance, Methamphetamine ".(R-226,Ln:2-10).

The states burden,was to prove, by the above described evidence, that the petitioner did sell methamphetamine, a controlled substance to another, unlawfully.(R-230,Ln:19, -R-231,Ln:5.) beyond a reasonable doubt.

D.

## <u>INSUFFICIENCY OF THE EVIDENCE</u>
### <u>COUNT ONE</u>

The tape recordings obtained on the 18th. day of September, 2001 (states exhibit#7.) was alleged to have been made during the course of time that Brock was indulged in a drug transaction with the petitioner, where Brock had purchased 1- vial of methamphetamine (states exhibit#1) from petitioner. (R-105,Ln:7,-R-110,Ln:11.)

The testimony of Brock was aided by notes she had made of the tapes,the night before the trial .(R-105,Ln:9-R107 Ln:21.)  however, Brock testifies that she had went over to petitioners house, and purchased $50.00 worth of methamphetamine from petitioners fiancee, "Penny", however the recorder did not pick up that transaction;

Later that evening, Brock returned to petitioners residents, and alleges she had to wait as methamph- etamine was being made, so petitioner invited her into the house,and "dried out some methamphetamine in a microwave placed it into a blood vial, and sold it to Brock for the #50.00 provided by Williamson, and  Brock testifies that thus, as testified "is all on tape." (R-105,Ln:9-R-110, Ln:11).

In the testimony of officer Williamson, Williamson testifies that Brock purchased the "dope from petitioner at approximately 1556 hrs.(R-74,Ln:4-14.)

and base that time on when he hears Brock state the deal has been done.(R-78 Ln:5-24.)

Petitioner contends that the tape recording on the 18th., does not reflect, nor support Brock, or Williamson testimony

The said recording only reflects that petitioner and Brock engaged in casual conversation regarding drugs, of which conversation was initiated by Brock, and of which conversation never reflect any sort of a sale, purchase or otherwise any drug transaction. (R-199,Ln: 16,-R-210,Ln:23)

COUNT TWO. 9-19-01
COUNT THREE, 9-20-01.

The tape recordings obtained on the 19th. day of September 2001,(exhibit #8) and 20th day of September, 2001,(exhibit #9) are alleged to have been made during the course of time that Brock had indulged in a drug transaction with the petitioner on both said dates, where, just like on the 18th., above, Brock would purchase 1-vial of methamphetamine on the 19th.(Exhibit # 2) and vial of methamphetamine on the 20th. (exhibit #3) and on each occasion, the purchase was make with Task Force funds by Brock.

Brock would therefore, give Williamson vials of methamphetamine for evidence. (R-97,Ln:6, R-103, Ln: 4). and on each said occasion, Brock would wear the eaves dropping device. (R-118,Ln:12-22.)

In corroboration, Williamson testifies that the receiving device provided him with the deal being made at 1105 hours on the 19th, (R-77Ln:4-R-78,Ln:4.) and 1803 hours on the 20th. (R-99,Ln:22,-R-80,Ln:16 .) when she had purchased said vials of methamphetamine from petitioner .

Petitioner contends that the tape recordings on the 19th. and the 20th. does not reflect, nor support Brock, or Williamson's testimony .

Again, the said recordings only reflect that petitioner and Brock engaged in causal conversation regarding drugs, initiated by Brock on each occasion,but never reflect any sort of actual sale, purchase or otherwise any drug transactions being made between petitioner and Brock (R-199,Ln:16,-R-210.Ln: 23.)

Although the records does not reflect on actual colloquy of the actual content of these above described tape recordings, the record does reflect as follows:

Brock requests to purchase one hundred dollars worth of drugs, and a male voice refers her to another person, to wit; Penny.(R-201, Ln: 3,-R-202,Ln:8.), and that the tapes reflect several male voices .(R-100,Ln:2-7.closing arguments and defense.)

Prosecutions closing/rebuttal closing arguments however, alleges that the tapes reflect that Brock purchased a half gram of methamphetamine,and petitioner offered larger quantities with better deals.(R-214,Ln:1-14.)...

and further that petitioner advise Brock "Don't go to the jury, Don't cop out, Don't plead, Don't get caught with this stuff. (R-191-Ln:1-3.)

However, petitioner contends that prosecution misquoted the language of the said tapes, and careful review of said tapes will reflect that upon each contact Brock made with the male voice alleged to be petitioner , Brock instigated a conversation pertaining to drugs, drug use, etc.

Specifically however, the male voice on the tape recordings reflect to have told Brock:

During one topic of drugs prosecution refer to ... the male voice merely offers his opinion that "if" you spend larger amounts of money, you get larger quantities... after observation, petitioner can aver that the tape merely reflects two persons "guessing" how a large purchase would happen,and not an offer.

During another topic, the male voice specifically tells Brock,"if"you do purchase anything,don't get caught with it, throw it out the window...etc.

During the third topic, the female voice request to make a purchase, and the male voice refers her to someone else, specifically stating, I don't sell or make anything.

* (see petitioners motion for production of Authentic Tape Recordings, attached hereto.)

The tape recordings prosecution refers to reflecting a sale and advising Brock " not to get caught with this stuff"etc., would be states exhibit #8, a tape recording made on September 19th.. 2001, of which would therefore be the most damaging,tape in that respect.

However, petitioner was acquitted of that count Of the 19th. of September, 2001. (R-257-258)

The testimony of Deputy Sheriff, Leslie Hussey,(R-90) has absolutely, no bearing upon the guilt or innocence of the petitioner.

Hussey's testimony merely verifies that he performed a search on Brock.

The testimony of Forensics Lab technician, Mike Benak, (R-135) as well has no bearing upon the guilt or innocence of the petitioner .

Benak's testimony merely described his duty's of analyzing the vials of flaky substance to be methamphetamine, a controlled substance. (Exhibits,4,5,6.)

The testimony of Deputy Sheriff, Bob Williamson, was used as a "VOICE EXPERT WITNESS", to identify the male voice on the tape(s) as petitioners,(R-84) however, Williamson is never declared as an expert by the court, more than likely due his manipulating,and repeated perjured testimony.(see ground 4)

However, Williamson testifies that he could identify petitioners voice on the tapes, because he had long conversations with petitioner during a domestic dispute acll where Williamson was called in approximately one month after the 18th,19th, and 20th.,alleged purchases.

Certainly, Williamson's testimony in all respects could not possibly be held as probative weight over petitioners guilt, identification, etc., as first Williamson is caught perjuring himself when saying that during the domestic dispute instance, petitioner talked  a lot when it concerned

his ability to identify petitioners voice, then found reason to claim petitioner did not talk much during that domestic instance.(R-50,Ln:13,-R-51, Ln:14.)

Further, the pre-sentencing report of petitioner,(C-98) reflects the domestic dispute to have occured on the 19th. of September, 2001, where petitioner was arrested on that date for harrassment.(see pre-sentencing report page 5)

centainly, Williamsons testimony should not be held credible in any instance of this case, nor bare any weight in prejudicing petitioners entitlements to this issue. (GROUND 4)

It is concisely demonstrated above that the "drug purchases" were recorded.

And as the tape recording do not reflect any drug transactions Brocks testimony does not support the petitioner conviction as evidence against him.

In so far the tapes, THE FIRST AMENDMENT of the UNITED STATES CONSTITUTION, provides any person the privilege of saying ,or discussing anything they so desire, unless prohibited by Law. which usually consist of threats, violence, or various conspiracy's.

In this instant case, No Laws have been broken in the above described conversations/ tape recordings.

The state moved for production of petitioner fingerprints and a voice example.(A),(B) above, summary of evidence and discovery.) These tolls were not used by prosecution, and one can only assume that therefore, it was not the petitioner voice on the tapes, or fingerprints on the vials of methamphetamine .

To support said, Documents of petitioners domestic arrest on the 19th. would reveal that the petitioner was incarcerated at that time for four days, extending into the 9-23-01.

To the best of petitioners knowledge, petitioners arrest took place on that domestic arrest date, between 0800, and 1000 hours.

Brocks purchase on the 19th. were to have taken place

-40-

at 1153 hours, at the time petitioner was incarcerated, both on the 19th. and 20th.

However, the same male voice alleged by Williamson to be petitioners, was the same voice on the 19th. and 20th. when petitioner was incarcerated.

Herefore, had fingerprints been taken off the vials of methamphetamine, allegedly purchased from petitioner, the fingerprints could not possibly be petitioners, which is another logical assumption as to why the states finger print tool was not used.

Specifically, the fingerprints on said vials would belong to williamson, Brock, and an obvious unknown drug dealer still on the loose.

Certainly, petitioner has given the states evidence against him the benefit of the doubt.

However, the above demonstrated evidence, is just not sufficiently viewed favorable to the sate.

The U.S. Supreme Court in Winship,397 U.S. 363, note that "If the government fails to sustain its burden of proof, on any element of the crime with which the defendant is charged, the defendant must be acquitted".

In this instant case, the government has not met its burden of proving any element(s) of 13A-12-211,Distribution of a controlled substance.

Petitioner motion for acquittal based on the Insufficiency of the evidence was denied several times, (R-171,Ln:11-25) (R-187,Ln:8-21.) and pro-se by petitioner post trial (C-56)

The trial court never gave defense counsel a chance to call his claim of insufficiency of evidence, but was rather blatantly evasive on that point.(R-171,Ln:11-25);(R_187, Ln:8-21.) however petitioners prose motion for Judgment of acquittal, (C.56) petitioner alleges insufficiency, and prejured testimony, however no hearing was held and the pose motion was denied (C.98.)

However, petitioner contends that the verdict is against the weight of the evidence as described above.

The court in U.S. V. Stanley, 24 F.3d 1314,1321 (11th. cir.1994)noted that "prosecutions failed to prove beyond reasonable doubt,

defendants knowledge of cocaine distribution required reversal of conviction for conspiracy to distribute cocaine "
 In this instant case, it is just the same point as in Stanley, id.,as well as Winship, id., the state has simply failed to produce evidence to satisfy the verdict in this cause, that the petitioner sold, furnished, gave away to anyone, manufactured, delivered or distributed a controlled substance, Brock or any other person.
 As the burden of proof consists of the burden of production and the burden of persuasion,Lafave & Scott,Criminal Law subsection1.8 (2d ed .1986);McCormic, evidence subsection 336-337(5th ed. 1999)   which requires,"the burden of convincing the fact finder that a fact in issue should be decided a certain way". and in this instant case, that petitioner "distributed a controlled substance to Brock"
 ... The burden of production has been met in this case , and neither has the burden of persuasion, as the juror(s) were not unanimously persuaded by the states evidence as to the petitioners guilt of the charged offenses, (R-250, Ln:7-25) and were requesting more evidence to persuade them (R-251,Ln:1,-R-252,Ln: 6.)
 The United States Supreme Court, in Mesareosh, V. U.S. 352 U.S. 1, 1. LED 2d 1,77 SCT1 (1956) ruled with respects to the Truthfullness of testimony " that "The dignity of the United States Government will not permit the conviction of any person on tainted testimony ".
 In this instant case, the only evidence that the state had against petitioner, to satisfy the elements of the crime with which petitioner was accused, was the testimony Brock and Williamson.
 Both of which testimonys, are tainted testimonies as described above, and demonstrated below in GROUNDS 4.
 See also : U.S. V. Necoechea ,986 f2d 1273 (9th cir. 1993); U.S. V. Arurs, 427 U.S.97.49 LED 2d 342, 96 sct 2392 (1976); White v. Rager,324U.S. 760, 89 LED 1348,65 sct 978.(1953), noting that "when the prosecution is or should be aware, that it is presenting prejured testimony, a strict standard of materiality will be applied ,and/or conviction will be set aside if there is any reason likely hood that the false testimony could have affected the judgment of the jury , and a conviction obtained by knowing use of false testimony must be set aside if there is any reasonable likely hood that the false testimony could have affected the out come of the trial".

In this instant case, as is demonstrated above the jury was un-unanimous as to obviously, the defendants guilt, and were requesting further evidence ... Certainly, the only evidence the jury could rely on in this case were the testimony's of Brock and the testimony of a high rank Commander and Deputy Sheriff, Bob Williamson, improperly placed before the jurors as an expert witness, as was Williamson never declared an expert.

However, of which testimony Brock, Williamson, the record will reflect was replete with lies, contradiction ,and manipulations. (Ground 4)

Certainly said testimony were tainted as so described solely to make excuses to satisfy various elements,and qualifications that this case required of the state; and not to exclude such said testimony tainted to hide personal incriminating evidence of Brock,and exculpetory to petitioner, of which actions petitioner demonstrates in grounds 5... below, which prosecution knowingly assisted.

As the tape recording i  this case reflect not petitioner guilt in this case.The jurors convicted petitioner on the word of Brock, and Williamson so above described tainted testimonys.

Had it not been for the prediction of these testimonys of adding lies to make there, what is not; had it been for the contradiction and manipulations creating confusion to the facts of this case, the jury would have had no problem in deciding a unanimous verdict of not guilty, as there were evidence to support the elements of the crime of which the petitioner was charged.

Hereby, the tsetimony of Brock, and Williamson, for the above described facts, were tainted testimony which had a significant impact on the out come of petitioners trial proceeding .

Petitioner herefore contents , that these said testimony and the use of them ,infringed upon his due process rights to liberty equal protection of the laws, and his rights to

a fair trial by an impartial jury, both of which rights are guarantied  to petitioner under the provisions of the 14th, and 5th, Amendment of the United States Constitution.

Further petitioner contends that in light of the foregoing, that for a conviction to stand in this tainted cause, would merely be an extended infringement upon said rights.

GROUND IV

PETITIONERS CONVICTION WAS OBTAINED BY THE
PROSECUTORS KNOWING UNCONSTITUTIONAL USE OF
PERJURED TESTIMONY.

---

A.        STATEMENT OF THE FACTS

As described in Ground 4., above, the evidence presented
by the state in this case, in critical part, was the
perjured testimony of a confidential informant, Angela
Brock,(R-97)the states key witness of whom was permitted
by prosecution to present perjured testimony on the witness
stand, in aid of prosecutions successful attempt to expand
evidence, and exclude incriminating evidence of said
witness, of which evidence was exculpatory in nature to
the petitioner, and otherwise insufficient without said
perjured testimony .

Just as critical of evidence presented by the state in
this case, and even more so persuasive upon the jurors,
was the perjured testimony of Deputy Sheriff, and commander
of the twelth judicial Task Force, Bob Williamson, a
witness for the state, of whom was as well permitted by
prosecution to perjury himself on the witness stand not
not only to aid Brocks perjured testimony and creditability
but to aid prosecution in predicating and excluding evidence
exposing petitioners innocence to the charges alleged;
to prejudice the jury with incriminating evidence about
petitioner which does not exist, and to qualify as
prosecution "Voice Expert Witness" regarding the illegally
obtained tape recordings(Ground, 2 ) and otherwise
insufficient evidence without said testimony

The states key witness, Angela Brock, (here in after
known as Brock) was arrested in Crenshaw County, Alabama,
in early 2001, on drug charges to wit:  Methamphetamine
(Crystal meth) and marijuana, (one joint/marijuana
cigarette.) (R-119, Ln:25,-R-122, Ln:4)

On the 6th. day of September, 2001, Brock signed a
contract whit the Twelth Judicial Task Force of Pike County
Alabama, with Deputy Sheriff, and Commander of the Twelth
Judicial Task Force, Bob Williamson (here in after known
as Williamson), Brock agreeing to work with Williamson and
his said division, as a confidential informant, and help
Williamson, etal, cause six drug busts, indictments, and
conviction.

-44-

Thus, in trade to be free of the Crenshaw County, Alabama
charges and any resulting criminal convictions therefrom.
(R-134, Ln: 4-20); (R-37, Ln: 17,-R-38, Ln: 21.); (R-126
-Ln: 16,-R-128,Ln:15.) see also (exhibit.1...)

    There after, Brock was arrested on September,10th.2001
for possession of a controlled substance, Contraband,
marijuana, and drugs. (see exhibit.5...)

    Brock claimed to have purchase methamphetamine from the
petitioner on the 18th, 19th, 20th, of September, 2001.
(R-37,R-126,R-134,).

    Brock claims no further use of drugs or narcotics after
Crenshaw County charges, nor her manufacturing such. (R-125,
Ln:12,-R-126, Ln:4.)

    Petitioner was arrested on the 19th. day of September ,
2001.(C.98.pg.5 of presentence report.)


B.          ISSUES PRESENTED AND ARGUMENT


        WHETHER PETITIONERS CONVICTION WAS OBTAINED BY THE
    PROSECUTIONS UNCONSTITUTIONAL USE OF PERJURED TESTIMONY

---

The following took place before the jury of petitioner trial:

1.)         TESTIMONY OF BROCK

    As a witness at petitioner trial, Brock testified that
she had not abused drugs or narcotics since her arrest in
Crenshaw County, Alabama, other than that which she was
forced to do, due her position as an informant of the
Task Force .(R-119,Ln:25,_R-121,Ln: 10.)

    Brock continues to testify under oath, that she had been
abusing drugs up to the date of petitioners trial, and
if someone were to testify that she had it , it would be
a lie.(R-123,Ln: 22,-R-126,Ln:4).

    Defense witness, Huey Barns, (R-173) a friend to Brock
Brocks Husband ,(Billy Brock), as well as a friend to
petitioner, testifies that he help Brock sell her vehicle
and furniture, to help Brock raise funds to bail her
husband out of jail; however, the following day, Brock
purchased crack cocaine with the alleged bail money in
2002.(R-177,Ln:5,-R-182,Ln:18.)

    In support of Barns testimony, petitioner presents ,
(exhibit.5...)

-45-

an N.C.I.C. printout which establishes that Brock, was arrested in Pike County,Alabama, on September 10th.2001, for possession of a controlled substance; contraband; marijuana;and drugs.

This, on N.C.I.C.printout, which establishes that Brock was arrested several months after the Crenshaw County incident with the same type drugs, and further establishes that Brock was arrest on the 10th. day of September , 2001, just four days after signing the Task Force contract, on September,6th,2001, and eight days before Brock claimed to have purchased methamphetamine from petitioner, onthe 18th, 19th, 20th,day of September, 2001, the same drug (methamphetamine) Brock was caught with on September , 10th ,2001, obviously purchased from someone other than petitioner .

## 2)        TESTIMONY OF WILLIAMSON

To assume that Brocks testimony was harmless, in said instance of perjury, is pointless as Williamsons testimony aids Brock perjury,as follows :

(A) In one instance, Williamson testifies that he was called to a domestic dispute incident which occurred at petitioners residents, where chimicials were observe by Williamson, which chemicals were those used to make manufacture methamphetamine, however no arrest was made. (R-50,Ln:13,-R-54Ln:1).

Specially, Williamson testifies that he had went to this domestic dispute approximately one month after Brock had purchased said drugs from petitioner on the 18th, 19th, 20th, day September,2001.(R-52,Ln: 18,-R-53Ln:23).

During the sentencing phase of this case , appeared a document reflecting petitioner being arrested on the 19th, day of September, 2001;(see presentence report, page five , note as, "9-19-01", Pike Co. dc.01-723", (Domestic case #2001-723)" Harassment,11-13-01,NP"(NOLLE PROSESSE)");(see said, exhibit .2...Attached hereto).

(B)   For a second instance of perjury, Williamson testifies with respect to his qualification as a voice expert witness, to identify petitioners voice, and states under oath that he had talked with petitioner for an hour and thirty minutes during the domestic dispute incident,

and could therefore identify petitioners voice without a
doubt.(R-49,Ln:8,-R-50, Ln:12.)
   During cross-examination of Williamson, regarding the
same matter, Williamson testifies that " petitioner did
not talk" much at all, however, defense counsel points
out his inaccurate testimony, then Williamson changes his
testimony back to " the petitioner did talk " constantly.
(R-50,Ln:12,-R-51,Ln:16).

(C) As a third instance, Williamson testifies that during
his hour and thirty minutes conversation with petitioner
at the domestic dispute, that other officers were there
observing, (R-51,Ln:16,-20), However,Williamson desides
to change his testimony when convenient, to stating that
there were no other officers present during said conversation
with the petitioner, as they were in and out . (R-52,Ln:3-17).


(D) As a fourth instance, Williamson testifies that he
had not dropped the Crenshaw County ,Ala. charges on
Brock until after her contract was fulfilled, because
he had experienced Confidential Informants who had run off
after he had dropped their charges before they fulfilled
their contract to testify and convict a case. (R-57,Ln:17-22)
   Then, williamson admits that that it was not he who had
experienced such disappearance of confidential informants,
but other officers he knew.... Then,Williamson admits that
he, nor any other officers he knew of had ever experienced
a confidential Informant to have disappeared, before they
fulfilled their said obligation to the contract and Task
Force. (R-56,Ln:8,-R-59,Ln:8)


3.                ARGUMENT.

   The court in U.S. V. Kelly, 35 F.3d 929, (4th.cir.1994):,
(citing by Brady V. Maryland, 373 U.S. 83,87 (1963)
note that,"A Law enforcement officer credibility should
not ever be in question in a court of Law".
   In this instant case, unfortunately, the record reflects
that officer Williamson's testimony is replete with back
to back manipulations and instances of perjury.
   As demonstrated above, are four separate instances of
willful and intentional instances of perjured testimony
by a critically important,and highly influential

Law enforcement witness who has not only sworn under oath to tell the truth in this court of law,(R-36,Ln:-5.), but has as well,sworn under oath to uphold the laws and constitution of Alabama and the United States as a duly appointed law enforcement officer, who has breached said oaths, as well as the trust invested in him by the public;

(1) For the purposes of qualifying as an expert witness; in the <u>first instance above</u>, (R-6,Ln:6,-R-8,Ln:17.); ....and to predicate the dates of the domestic dispute in order to increase his ability of a "Qualified Voice Expert", and place petitioner without a doubt, at the scene of the charged offence;....(In Support of Brock allegations) ...and most damaging, to mislead and prejudice the jury into believing that petitioner was "manufacturing methamphetamine simply to support Brocks testimony (R-124 Ln:14-22.), with no supporting evidence regarding this matter. (R-87,Ln:12,-R-89,Ln:13.) nor reflecting support by the tape recordings. (R-199,Ln:16,-R-210,Ln:23.and Ground.3...above.)

(2) <u>In instance two</u>, above, is a second perjurd attempt to boast his being qualified as a Voice Expert witness, to no avail.

(3) <u>In this instance three</u>, above, is a third perjured attempt to qualify as a Voice Expert wetness, by declaring the existence of other Law enforcement officers present, which were not present.

(4) <u>In instance four</u> above, is a third perjured attempt to again try and boast the credibility of the testimony of Brock, which resulted in more false facts supplanted in the jury minds.

Certainly this is a halmark demonstration of a law-enforcement officer, officer Williamson, willing to commit perjury in a court of law to prove his many points of qualifications,etc. and support in the juries minds evidence which did not exist, simply to viciously and maliciously prosecute an innocent petitioner.

4.    <u>The Court in U.S. V. Mclaughlin, 89 F. supp. 2d 617 (E.d.Pa. 2000); and U.S. V. Agurs, 427 U.S. 97 96 SCT 2392, 49 LEd 2d 342 (1976.)</u>, have consistently held that a criminal conviction by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony

could have affected the judgment of the jury....This rule also applies to whether prosecution knew of the jury, or merely should have known.

In this instant case, there is no question that prosecution knew that Brock September 10th. 2001, arrest as described above, had occurred.

First, petitioner defense attorney motioned the trial court before trial for discovery, in re:"All N.C.I.C. Reports on Brock (C-21,pg: 3#9.L.), of which motion was granted amd so ordered for production. (C-28.)

The entire record in this cause does not reflect the prosecution in this cause obeying this court order to produce N.C.I.C. on Brock.

However the trial record reflects that defense had to obtain the N.C.I.C. printout through the court clerks office.(R-123,Ln:11-14.)

Upon defense counsel's attempt to present information of this N.C.I.C. document, prosecution intervened with objection to the N.C.I.C., printout being admitted as defense exhibit one, and the trial court would not allow defense counsel to lay proper predicate for its admission, nor allow Brock's willful attempt to elaborate regarding the printout. (R-122,Ln:5,-R-123,Ln:21.)

5.   The U.S.Supreme Court in <u>Mooney V. Holohan, 294 U.S. 103, 108, (1935)</u>has ruled that "Due process is violated when prosecution learned during trial that a witness committed perjury but failed to inform defense counsel."

(a) In this instant case, prosecutions above described actions was much more serious a violation, as prosecution knew of Brock N.C.I.C. status before trial, but failed to produce it to defense.

Even worse, prosecution knew Brock was committing perjury, an prosecution, as well as the trial court actually assisted Brock in evading the subject of Brocks September 10th,2001 arrest, as well as the fact that Brock was still doing; and had access to such drugs, and narcotics.... Certainly a knowing action on part of prosecution forbided by due process, <u>Mooney id. Agurs.id</u>.

(b) The courts in <u>Kelly,id</u>. note that "due process requires the government to disclose material evidence affecting the credibility of a government witness, and that a conviction must be reversed if there is any reasonable likely hood that the false testimony could have affected the judgment of the jury, even if the testimony relates only to the credibility of the government witness

and other evidence also has called into question the credibility of that witness.

In this instant case, there is no doubt, as demonstrated above, that all aspects of evidence (Williamson, Tape Recordings, etc.,) has called into question the credibility of Brocks testimony.

As petitioner has demonstrated in Ground.3...above, the states case rest solely upon the testimony of Brock and Williamson, and is the only evidence the state had to prove the element(s) of the charges alleged against the petitioner

Certainly, two witness having a substantial impact upon the judgment in this case,

(c) In so fore as the credibility of Brock , Brock was permitted over objection of defense, to give her testimony from handwritten notes she had made the night before trial. (R-105,Ln:7,-R-107,Ln:21.)

This was obviously permitted because the length of the time between the time of the alleged drug transactions in question, and the trial proceeding in question, over a year, and had impaired Brocks memory. (R-134,Ln:4-25.)

However, in multiple instances of perjury, Brock outrageously expands on what occurred during them time frames of which the tapes were made, and makes allegations under oath, which is not supported by the tapes. (R-199. Ln:16,-R-202,Ln:8.)

When Brock was not called back on Redirect/ Recross regarding those tape, Brock manipulated her testimony without those notes. (R-155,Ln:4-R-171,Ln:1.)

6.   In Cummings V.Malone, 995F2d 817(8th cir 1993)the court held that "ability to introduce specific prior crimes is not a license to flaunt its details; cross examiners are limited to eliciting the name, date, and disposition of felony committed .

(a) In this instant case, defense counsel was not trying to flaunt the details, but was merely trying to establish the felony committed on the N.C.I.C. printout, their dates and dispositions.

Thus, a certain right petitioner concieved at his trial as Brock desire was to deny drug use, manufacturing of it

and declared it would be a lie if someone were to testify saying it were true.

Brocks credibility was in question, as to her motivation to give fictitious testimony, or make fictitious allegation against petitioner (R-110,-R127.)...And still, the most significant question at record, with respects to Brocks perjury, her motive, and the n.c.i.c. Printout establishing that she was at lease using/ purchasing drugs beyond her obligations with the Task Force, is the question as to whether Brock did or had the opportunity to obtain methamphetamine from some one else, before or after meeting with task force agents, and claim that she had purchase said from petitioner. (R-100,Ln:25,-R-103,Ln:4.)

(b)  Not to exclude that the N.C.I.C. Printout was reflecting the purchase of methamphetamine, or possession of it, just before her alleged purchase from petitioner of the same drug,but as well a defense witness testified that she still had access to such drugs just before trial. (barns.R-173)

Certainly, a significant factor needed placing before the jury, when considering petitioners innocence or guilt. Brocks desire to be free of Crenshaw County charges, and task force contract, and Brocks credibility as telling the truth, and most important of all, when considering that the tape recordings do not reflect the petitioners commission of the offers alleged,

7.    EFFECT OF TESTIMONY UPON THE JURY.

Had the N.C.I.C. printout document regarding Brocks said September 10th., 2001, arrest been presented properly it would have had an impact on the jury, so as to discredit Brocks testimony, and raise d several questions in the jury's minds,as to the truthfulness of her testimony .

(a) First; Brocks testimony would be declared as perjury, and shown the jury that Brock did in fact have access to methamphetamine, a controlled substance, only eight(8) days before she claimed to have purchased it from the petitioner . Thus, a purchase on the 10th, day of September,2001,of which Brock obviously purchased from someone else other than petitioner

(b) Second, Brocks testimony, as to Brock hiding the facts from the jury that she was infact still abusing and or had access to mrthamphetamine, etc.,would have shown the jury that she was willing to lie to them, for whatever reasons, and had been purchasing said controlled substance to set the petitioner up.

Certainly, Brock perjured testimony had a sever impact upon the jury, for had she been truthful of her criminal history statues, the jury would have then been provided significant access to all reasonable doubt in this case as Brock testimony was the only crucial evidence in this case...As the petitioner demonstrates above, and in grounds 3,above . The tape recordings as evidence in this case, does not reflect a drug transaction ever being made between Brock and the petitioner (R-199,Ln:16,-R-202,Ln:8.)

(C) Third . without Brocks honesty in her testimony, even though Brock claims she could have passed by search of agents by sticking the vials of methamphetamine in various places,(R208,Ln:14,-R-209) in order to return to agents to say her purchased said from petitioner.

As demonstrated above, Brocks testimony is the incriminating evidence in this case unsupported and contradicted by other evidence in this case, and obviously therefore, the only evidence which could have caused a conviction against the petitioner .

Certainly had Brock been proven a perjurer by the N.C.I.C. printout regarding her criminal statues, the verdict may have been different, as the jury initially could not come up with a unanimous vote (R-250,Ln:7-25) and atleast one juror requested the opportunity to hear more evidence in this case. (R-251,Ln:7-R-256,Ln:6.)

8. Just as with Brock criminal status, petitioner defense attorney requested pre-trial discovery to analyze, inspect and copy all documents etc. which the state intends for use by the state as evidence at petitioners trial (C-21, #16.) or exculpatory to the petitioner (C-22#7) and so ordered by the trial court (C-28).

(a) The clerks record does not reflect prosecution ever providing defense with N.C.I.C.Printout regarding the date of which the domestic dispute arrest of petitioner occured, However the states"First Response to defendants motion for discovery " (C-32) does revel prosecutions intentions to invoke criminal history statues against petitioner, listing several prior obtained obviously from N.C.I.C. printout etc. (C-34).

(b) During the course of trial prosecution initiated this domestic dispute time frame, in effort to qualify Williamson as a voice expert witness to identify petitioners voice, (R49,Ln:8,-R-50,Ln:2.) of which williamson identify this domestic dispute time he had spoken with petitioner, being approximately one month after the alleged drug transactions on the 18th.,19th.,20th., of September,2001.(R-50,Ln:13,-R-54,Ln:1.) and for which defense counsel again requested documents to reflect such arrest and domestic dispute.(R-52, Ln:!#,-R,53,Ln:23.); (R-84,Ln:12,-R-88,Ln:10.)

The document in question is an arrest record eventually given to defense during pre-sentencing report, reflecting
* the petitioner having been arrested on the 19th. day of September,2001,(see exhibit.2.. Pre-sentencing report,
* page #5. noted as "9-19-01, Pike County D.C.01-723 (domestic case no. 2001-00723.) harassment 11-13-01. NP. (Nole Prosessqui.) (C-34).
.* Here according to this document (C-98pg. 5) petitioner had been arrested on the 19th, day of September 2001, and not a month later.

(c) In furtherance, the entire arrest report will reflect that the petitioner was  arrested on the 19th. day of September, 2001, and remain incarcerated until the 23rd day of September,2001 specially within the time frame that petitioner was to have sold Brock drugs on the 19th,and 20th of September, 2001.

(d) Thus as well, perjured testimony used in closing
* arguments which was used by prosecution, improperly a voice expert witness.(R-212,Ln: 20-25.)

There is no doubt that the perjured testimony of Williamson had a substantial impact on jury and judgment in this cause, as like Brock, Williamson testimony was also the only evidence the state had against petitioner.

Being a law-enforcement officer of such rank, was more than prone to have had a substantial influence upon the jurors, over the petitioners plead of not guilty.

Thus, a testimony of a law-enforcement officer,which should not be in question before this court, and of which testimony, in all respects, as demonstrated above, unduly implicated petitioner in crimes of which petitioner did not commit.U.S. V. Kelly. id.

9.   The Court U.S. V. Hanna, 55 F30 1456 (9th cir 1995) (citing of Brady V. Maryland, supra) defines Brady material as"evidence material either to guilt or punishment which is favorable to the accused irrespective of good or bad faith," and specifically states that "Prosecutions duty is to reveal Brady material and does not depend on request of defense."

Further, Rule 404(A),(3).Ala.Rules,Evidence, Re:Rules, 607,608,609,and 616, Ala.Rul.Evid. provides admissibility of character evidence for impeachment, which is consistent with pre-existing Alabama laws; GAMBLE, CHARACTER EVIDENCE, A COMPREHENSIVE APPROACH 56(1987) observing that "whenever a witness takes the stand, whether the witnesses is a party or not, a limited aspect of the witnesses character is placed in issue, i.e. PROPENSITY FOR TELLING THE TRUTH".

See also, Smitherman V.State, 521 So 2d 1050, )Ala. Crim. App. 1987); and Brady V. Maryland, 373U.S 83,87.(1963); T.18 U.S.C.Subsection 3500.

In this instant case, Prosecution had, but deliberately ignored their duty to disclose the above described information to the jury, and/or to defense.

Certainly, as supported by the trial record in this cause, and clerks record, as demonstrated above, prosecutions sole intentions was to deliberately and recklessly infringe upon the petitioners due process rights in all respects, and petitioners right to confront his accuser, and recieve a fair trial.All of which rights are guaranteed petitioner through and by the 14th, amendment of the United states constitution.

10. Certainly, the above described can only be recognized in the eyes of justice as tainted, perjured testimony.

The supreme court of the United States, has long standing ruled that the dignity of the United States Government will not permit the conviction of any person on tainted testimony. see Mesareosh V. U.S. 352U.S. 1,1LED 2d 1, 77 SCT 1(1956).

As described above in this case the testimony of Brock, and Williamson, is by far truthful and as demonstrated above is simply exaggerated, when considering that these two testimonies were the only evidence placing petitioner in commission of the alleged offence, and the illegal tape recordings (Ground 2,above) alleging to have recorded the entire commission of the offense alleged simply do not reflect such an offense ,to have occurred nor do the tape recording support the testimonies of Brock and Williamson alleging under oath that the alleged offenses did in fact occur.

Certainly, thus ,in conjunction with the above described documents proving unfaithful testimony of the two witnesses are clearly motivated testimonies tainted by multiple instances of perjury, and simply to produce false evidence for the state.

Further, the Supreme Court has held that "A conviction obtained through the use of false evidence must fail ", see Mooney V.Holohan, 294,U.S. 103, 55 S.ct. 177,87 1.Ed. 791 (1935); Pyle V. Kansas, 317 U.S. 213,63 S. ct.177, 87. L.Ed. 214 (1942);...." even if the state merely allows the false evidence to go uncorrected" Alcorta V. Texas, 355U.S.28, 78 S.ct,103,2 L.Ed. 2d (1957).

And,"that a defendants right to a fair trial is violated when the state knowingly allows false evidence to be used against the defendant,"Miller v. Pate, 386U.S. 1,87 S.ct. 785,17 LED.2d 690 (1967);Napue V. Illinois,360 U.S. 264 79 S.ct. 1173, 3 LED .2d 1217 (1959). in this instant case,

As demonstrated above, there is no other evidence presented at trial to have caused a conviction in this cause (see Ground 3) except said perjured testimonies, certainly , false evidence, of which is additionally demonstrated above, deliberately placed before the jurors as evidence against petitioner, by the state,and there by ,simply depriving petitioner of the right to a fair trial.

Similarly, the Supreme court has held that "A defendants rights are violated if the state withholds favorable material evidence which defendant has requested . see Brady V. Maryland, 373 U.S. 83, 83 S.ct. 1194, 10 L.Ed. 2d 215 (1963); U.S. V. Agurs, 427 U.S. 97,96 S.ct 2392, 49 L.Ed 2d 342 (1976).

In this instant case ,as demonstrated above, and below in ground Five, and supported by the trial record, the state deliberately withheld the above described impeaching documents,from Brady request of defense, prevented one said document from being presented as defense exhibit 1, and attempted to use the other document to enhance petitioners conviction.

The Supreme Court holds that " The district attorneys intrest in a criminal prosecution is not that HE shall win a case, but that justice shall be done.. As such, he is in a peculiar and definite sense the servant of the law ,the twofold aim of which is that guilt shall not escape, or innocence suffer. "see,Berger V. U.S. 295, U.S. 78,88,55 S.ct 629,633,79. LEd.1314 (1935.)


In this instant case, the evidence reflects that the innocent, this petitioner, suffers merely because of the states deliberate course to exclude favorable evidence in order to predicate and present tainted, false evidence through perjured testimony to "win this case", and insulting the dignity of the Judicial system, and with full and complete disregard to petitioners rights to due process (14th. amend.U.S.Const) and the right to a fair trial (6th.amend U.S.Const)

For the foregoing reasons, petitioner asserts a sixth, and Fourteenth Amendment Violation of the United States Constitution.to due process, equal protection of the law, and to a fair trial, and herefor, should be entitled to and hereby requests a vacated conviction on these grounds or in the alternative a new trial.

GROUND V

CONVICTION OBTAINED BY THE UNCONSTITUTIONAL FAILURE
OF THE PROSECUTION TO PERFORM THEIR DUTY TO DISCLOSE
BRADY EVIDENCE FAVORABLE TO THE PETITIONER

A.        STATEMENT OF THE FACTS.
(i) Petitioner was accused of unlawful Distribution of a
controlled substance in violation of 13A-12-211, Code of
Alabama, to wit: "Selling a confidential informant, Angela
Brock, (herein after known as Brock) three vials of
methamphetamine, a controlled substance, on the 18th,
19th,20th, day of September, 2001.

(ii) Prior, Brock had received criminal possession charges
of methamphetamine and marijuana, in Crenshaw County,
Alabama,  early 2001 (R-119,Ln: 25,-R-121,Ln: 21)

(iii) Thereafter, Brock, signed contract with the Twelth
Judicial Task Force of Pike County,Alabama, to work as a
confidential informant, to cause 6 drug indictments,and
convictions, as a means of working off the Crenshaw County
charges; on September 6th. 2001.(R-54-56)

(iv) Brock was there after, arrested in Pike County Alabama
on September 10th,2001, on drug charges, to wit, possession
of a controlled substance, contraband, marijuana, and drugs.
(exhibit 5)

(V) Petitioner was arrested on September 19th., 2001, on
domestic dispute harassment charges and stayed in jail four
days, being released on the 23rd. of September, 2001,(C-98,
pg:5.presentence report).

(vi) On April 19th,2001, Thomas, (trial attorney for
petitioner ) moved the trial court for a order for Discovery,
to wit inpertinent part,"For all exculpatory materials,
items, evidence, statements , etc. which is exculpatory
evidence ." and " The criminal records, N.C.I.C.REPORTS,
any list computer printout or summary reflecting criminal
records of all persons whom the state intends to call as
witnesses in the trial of the named defendant." (C-21, pg
2 #7, pg: 3#9.L.)

(vii)The trial court ordered the state attorney on April
18th, 2002, to produce any and all evidence tending to
exculpate the guilt of the defendant. (C-28.#1,(d).)

(viii) The states response, abandon's Brocks N.C.I.C.
printout, re: September ,10th,2001. (iv,above), and further
notifies defense that the state will be invoking

The Habitual offender statute based on petitioners
criminal history charges, however fails to include in
criminal status petitioners September 19th, 2001,Harassment
arrest. (C-32,pg: 2,3)

(ix) Prosecution used petitioners September,19th,2001
harassment arrest in sentencing, presentence report.(see
C-98.dated 2-6-02.);(R-269)

B.          ISSUE PRESENTED AND ARGUMENT
    WHETHER PROSECUTION HAD A DUTY TO DISCLOSE EVIDENCE
    FAVORABLE TO THE ACCUSED,THIS PETITIONER,AND IF SO,
    WHETHER PROSECUTIONS FAILURE TO DISCLOSE SAID
PREJUDICED PETITIONERS CONSTITUTIONAL RIGHT
    TO CONFRONT HIS ACCUSER, RIGHT TO A FAIR TRIAL,
AND DUE-PROCESS RIGHT.

---

Petitioner contends that prosecution knowingly excluded
evidence from discovery request, which was exculpatory to
the petitioner,of which evidence was most prone to have
altered the juries verdict of not guilty , more favorable
to petitioner,
....DOCUMENT,-1, N.C.I.C. PRINTOUT (EXHIBIT.5..)
(i) As petitioner describes above of statement of facts
prosecution failed to produce N.C.I.C. printout regarding
the facts that the confidential informant, Brock,the
States Key witness, having been arrested on September,10th,
2001, for possession of a controlled substance, etc.
(iv.above).
   Brock, testifies as a witness at petitioners trial, that
she had purchased methamphetamine from petitioner on the
18th, 19th, and 20th. day of September,2001.(R-37,R-126,
R134.)
   As petitioner demonstrates in ground four above, Brock
credibility is in serious question, and the most significant
question at hand was whether Brock had access to, or
opportunity to purchase methamphetamine from someone other
than petitioner,yet accuse petitioner of selling it to her.
(R-100,Ln:25,-R-103,Ln:4.), as means of causing an
indictment and conviction, to get herself out of trouble.
(R-110,R-127.)

As a witness at petitioners trial, Brock testifies that she had not abused drugs or narcotics since her Crenshaw County arrest, of which she signed Task Force Contract to work off, nor does she make methamphetamine ,(R-119,Ln:25, R-121,Ln:10) and if someone were to testify that she did, it would be a lie.(R-123,Ln:22-R-26,Ln:4)

Although a defense witness, Huey Barns, (R-173) testifies that Brock was in fact purchasing narcotics, said defense witnesses testimony is supported by an N.C.I.C. printout which establishes that Brock was arrested on September, 10th,2001, for "possession of a controlled substance, contraband, marijuana, and drugs." (see exhibit 5).

Thus September 10th,2001, arrest of Brock, was merely four days after signing the Task Force Contract, and eight days before she was alleged to have purchased a controlled substance from petitioner; a controlled substance of which Brock was discovered with on the 10th,day of September, 2001,in Pike County, and an identical controlled substance Brock claimed to have purchased from the petitioner eight days later on the 18th,19th,20th,of September,2001.

(ii) DOCUMENT-2. ARREST PRINTOUT. (C-98,pg:5.Presentence report)

As petitioner describes above,in statement of facts, prosecution failed to disclose petitioner arrest report, regarding September,19th,2001,an arrest of petitioner which was for harassment during a domestic dispute.(v.above) yet used the said information in presentence report (ix,above)

Brock testifies that she had purchased methamphetamine at petitioners home,on the 18th,19th,20th,2001, from petitioner.(R-37,R-126,R-134.)

As well ,Williamson testifies that he had talked to petitioner during the domestic dispute incident(v.above) which occured approximately one month after the 18th,19th, 20th,September 2001 drug transactions.

Further, supporting this testimony is officer Bob Williamson, a deputy Sheriff,and commander of the Twelth Judicial Task Force of Pike County, Alabama,whom testifies that he assisted Brock in purchasing methamphetamine from petitioner on the 18th,19th,20th,September,2001, (R-39-46.)

As petitioner demonstrates in ground four above, williamsons testimony is also in serious question of perjury, regarding this matter, in effort to qualify as a Voice Expert witness for the state.

Specifically this document (ix,above) provides that the petitioner was in jail,on the 19th, day of September,2001, the day petitioner was alleged to have sold Brock, methamphetamine.

Further, although prosecution finally produced said report at sentencing phase, prosecution has still failed to produce the entire file of that charge,arrest,of which file would reveal not only that the petitioner was arrested on the 19th., day of September,2001,but remained in jail until the 23rd,day of September, 2001.

Thus infact, exculpatory to petitioner , considering petitioner was not able to have sold Brock methamphetamine on the 18th,19th,29th, day of September,2001,as he was in jail.

In support of exculpating petitioner,tape recordings were made on the 18th,19th,20th,September 2001, recording the alleged said drug transactions between Brock and petitioner, which turns out not to even reflect a drug transaction, but casual conversations of drugs.

Regardless,Williamson declares "without a doubt" that petitioner is the male voice on those tapes, talking to Brock on those dates.(18,19,20) of which dates,petitioner was in jail.

## —ARGUMENT

C.

Although defendants have no general constitutional right to discovery in criminal proceedings, according to Weatherford V.Bursey, 429U.S. 545,559(1977),courts have rules providing for disclosure of certain types of evidence when necessary to safeguard a defendants due process rights.

In Brady V. Maryland,373 U.S. 83,87 (1963), The Supreme court (U.S.) held that, "Due process requires the prosecution to disclose evidence favorable to an accused upon request when such evidence is material guilt or punishment.

In Brady, the prosecutor failed to disclose a confession obtained from one of the defendants accomplices after the defendant requested such statement, id.at84.

Defendant was granted a new trial on the question of punishment because the disclosed confession was material to punishment; the issue of guilt was not retired because the confession could not have been used to reduce the offense charged. Id.at 90-91.

In this instant case, as petitioner demonstrates above the two excluded documents was material to the guilt phase of petitioners trial.

Document one would be rather Brock was lying and hiding the facts that she set petitioner up, and document two, would be rather the petitioner could possibly be guilty, hence ,at the scene of the crime.

D.    The Supreme Court in U.S. V. Agurs,427 U.S.97, 107-11(1976), has established that prosecution duty under Brady arises whether or not the defendant specifically requests favorable evidence.

In Agurs, the court held that,"Prosecutions constitutional duty to disclose favorable evidence governed by materiality standard and not limited to situations where defendant has requested favorable evidence".

The court in United States V. Bagley, 473 U.S. 667, 682 (1985),held that,"evidence is material if there is a reasonable probability that disclosure of the evidence would have changed the outcome of the processing.

In the materiality respect, the courts in White V. Helling, 194 F3d 937 943-45, (8th cir 1999) rendered that "Material evidence withheld in violation of Brady because reasonable probability existed that disclosure of police memoranda, which impeached the credibility of witnesses identification of defendant, would have changed the outcome of the trial"

In this instant case, there is not much difference, with respect to document 2,above, petitioner arrest report. (v.above).

As petitioner demonstrates above, had document 2. been presented, there is no doubt the jury would have found petitioner not guilty, as it exculpates petitioner of the charged offense,and just as now, destroys the credibility of Agent Williamson, on top of all other instances of perjury during his testimony, see ground four above,and would have specifically discredited the improper influence of his being considered a voice expert identifying petitioner voice on tapes in the presence of the jury,at petitioner trial.

Certainly, when applying the materiality standard to the above described document 2 (v.above) Arurs,id., and the probable out come on the petitioners trial proceedings in all respects, Bagley, id., Prosecution duty to disclose this information was mandatory, Agurs,id., and in prosecutions failing to so disclose, was violative of petitioners due process rights. Helling,id., Brady,id.,(see also, ineffectiveness of trial counsel, ground VIII.)

E.    Although there's many aspects which prosecution is not entitled to disclose, prosecution does have a duty to learn and produce any favorable evidence known to other government agents including police. Kyles V. Whitley, 514 U.S. at 437.

In this instant case prosecution failed to inspect police filies, or failed to produce document 2 above, until sentencing . (A.(ix),above)

In all instances, prosecution failure to produce the said document 2 underminded the confidence of the verdict, Kyles,id. at 435.as Williamsons said testimony was,in cumulation with Brock the only evidence against petitioner.


F.    DOCUMENT 1

With respects to the nature of Brocks September 10th,2001, Pike County arrest, (iv,above) The evidence in this case, as described in ground three above, with respects to the tape recordings, does not reflect any drug transactions in any way. As petitioner demonstrates above.

Document 1. Specifically shows that Brock had access the same controlled substance, she claims to have purchased from petitioner, only eight days prior to alleged purchasing from petitioner.

However, Brock declares before petitioners jury, that she hadn't purchased, used nor does she make methamphetamine.

Defense witness Barns, establishes Brock purchasing drugs up to the date of petitioners trial, which she denied, and document 2,N.C.I.C. printout establishes that Brock was infact,atleast in possession of a controlled substance,other than possession due working with the task force, when she denied abuse, possession , since Crenshaw County, unless it was due working for the task force.

In this instant case, petitioner would be required pursuant to Kyles V. Whitely, 514 U.S. 435, to demonstrate a reasonable probability of a different outcome hence"the defendant must show that the 'favorable evidence withheld', could reasonably be taken to put the whole case in such a different light as to undermine confidence of the verdict".
In this instant case, as demonstrated above, the tape recordings were to have reflected what allegedly occured between Brock and petitioner hence ,a drug transaction,however the tapes simply do not reflect such,yet Brock expands such as true, what is not on the tapes

Therefore, the most significant facts the jurors needed to hear in this case, is not necessarily where the drugs came from (Three vials of methamphetamine, states exhibits 1,2,3.)

but, whether they were purchased from the petitioner by Brock certainly Document-1., being placed before the jury would have reasonably shed a whole different light on the case against petitioner, when considering Brock denied abusing, making, or buying narcotics or other drugs, other than for the task force, when official documents says she was, before allegedly purchasing it from petitioner.

Further, considering Document-1., supported the question placed before the jury as to whether Brock purchased or obtained said drug from someone or somewhere else, and claimed that she had purchased it from the petitioner to aviod prison time by setting someone up she hardly knew, this petitioner, the exclusion of document-1, deprived petitioner opportunity to confront his accuser, there with shedding a hold new light on the case, with official facts the jury was entitled to hear, considering Brock perjured herself on the witness stand regarding this matter, (Ground-4) and the insufficiency of the evidence, (Ground 3) Document-1., was relevant evidence as to wether the jury would believe Brock testimony that "Petitioner sold her a controlled substance."

G.  For prosecution to with hold document-1, as well as document-2, above herefore, undermined confidence in the resulting verdict.

In U.S. V. Cuffie, 80 F.3d 514, 518 (D.C. cir, 1996) the court notes that "Due process violated by nondisclosure of witness prior perjury because, although jury was presented with other reason to discredit testimony, truthful testimony was fundamental to integrity of judicial proceedings"

In this instant case, Brock testimony was the states Key evidence against petitioner, truthful testimony was therefore was a must, that alone fundamental to the integrity of the judicial proceeding, and non-disclosure of Document-1, discrediting Brocks testimony violated petitioners due process rights. (14th, Amend.U.S.Const.)

H.  Another factor of exclusion of Brady material, would seem to depend on whether prosecution acted in bad faith.
Brady V. Maryland, 373 U.S. at 87.

In this instant case, Defense counsel ended up obtaining Document-1 through the court clerks office. (R_122,123)

When defense counsel attempted to present Document-1, as defense exhibit-1, prosecution, in addition to the above, intervenes and manages to prohibit Defense from placing this document's information for the above reasons before the jurors as defense exhibit,1. (R-122,123)

Thus there is no doubt prosecution was acting in bad faith.

The 11th, circuit held in, U.S. V. Arnold, 117F.3d 1308, (11th.cir.1997) that"material evidence withheld in violation of Brady because case was "close",and suppressed evidence put Key testimony in doubt".

In this instant case, as petitioner demonstrates in ground .3.. above, this case was not close, but was insufficient in evidence to convict petitioner,had it not been for Brocks testimony, and an unknown portion of the jury was in doubt as to find the petitioner guilty,and requesting more evidence.(R-251-252)

certainly Document-1, would have placed Brocks testimony in grave doubt,and was material to petitioners guilt.

With respects to the above actions of prosecution, there should be no doubt, that prosecution was acting in deliberate bad faith, and thereby, violated petitioners due process. (14th. Amend. U.S.Const.) in all respects, to a fair trial. (6th.Amend. U.S.Const.)

Document-1, and Document-2, was extremely material, and the disclosure and/or presentation of which, would have been more prone to have caused a completely different outcome of the trial,as said documents were the "extra evidence " the jurors were requesting/ entitled to hear. (R-251-252)

However, prosecution choose to infringe upon petitioner constitutional (U.S.)rights to a fair trial,and to confront his accuser,as well as rights to due process, by deliberately withholding potentially exculpatory evidence which was demanded by defense; thus , an action by prosecution carried out specifically to tailor the very nature of petitioners trial to their advantage .

Thus, actions by prosecution, prohibited by the supreme Court of the United States in any trial proceedings,and rendered a violation of constitutional rights to a fair and due process(U.S.Const.Amend.6,14.) and an orchestration of trial proceeding which does not comport with accepted

Brady-8

Standards of Justice, see Brady V. Maryland, 373 U.S.at
83,87-88,83 s.ct.at 1194,1196, 1197,10 LEd.2d.215
(1963); United States V. Argus,427 U.S. 97,96 S.ct.2392,
49 L.Ed.2d 342 (1976),see also Moore V. Illinoise,408U.S.
786, 92 S.ct.2562,33L.Ed.2d 706(1972),(Moore/Brady test)
Id at.794,92 S.ct.2568.

    And for the foregoing reasons, petitioner asserts a
sixth , and fourteenth Amendment violation of the United
States Constitution, of due process,and a fair trial,and
herefore, should be entitled to and hereby requests a
vacated conviction on these grounds, or in the alternative,
a new trial.

## GROUND VI

CONVICTION OBTAINED DUE JUROR CONTAMINATION DURING
VOIR DIRE AND THROUGHOUT TRIAL OF EXTRANEOUS EXTRA RECORD
INFORMATION, JUROR CONTACTS, AND COERCION BY THE COURT

### STATEMENT OF THE FACTS.

(A) INSTANCE-ONE:
   The trial courts Allen charge coerced the jury into
reaching its verdict.(R-247,Ln:13,-R-252,Ln:22.)

(B) INSTANCE-TWO:
   The trial court selected two juries at the same time and
therein exposing extra record information inflammatory
to petitioner which extended throughout the trial proceeding.

(C) INSTANCE-THREE:
   The jury was permitted to examine evidence not examined
in trial, nor admissible in evidence.

(D) INSTANCE-FOUR:
   Jurors come in contact with courtroom spectator who's
hostile toward's petitioner.

(E) INSTANCE- FIVE:
   Trial court misrepresented material facts to jurors,
to coerce jury to choose particular foreperson.

### ISSUE PRESENTED AND ARGUMENT.

(A) WHETHER THE TRIAL COURTS ALLEN CHARGE COERCED JURY
   INTO REACHING ITS VERDICT, WITH INSUFFICIENT
LANGUAGE AND ABUSE OF ALLEN CHARGE

### STATEMNT OF THE FACTS

### INSTANCE ONE

(a) The jurors after deliberating, were unable to reach
a unanimous verdict(R-247,Ln:8-21.)
(b) The trial court instructs the jury that although it is
very common for juries not to reach a verdict at such an
early stage, the court has had juries deliberate for a
week before they can reach a verdict and he is not
pressuring a verdict, but "we" have been at deliberating
a very short time; That"we" started the trial in this case;
"that the courts time is very valuable and"you" read other
people are waiting to have their cases tried...

and the court imagines that "These Parties" want this matters resolved, so the court cannot release them. (R-247,Ln:22,-R-249,Ln:12.)

(C) The court thereafter gave the jury the option to deliberate on, or break, after, discussion, the jury decided to continue.

However, the jurors were inquestion as to "what if we can't reach a unanimous verdict," and the court advised the jury that if it takes tomorrow or sometime next week, or go into the weekend "we will do that in these cases." There after, the jury decided to continue deliberations the next morning. (R-249,Ln:12,-R-251,Ln:5.)

(d) In the courts instructions the following morning, the court statements are as follows:

(1) "I know no other jury could have more information than you have, so we ask that you do the best you can do "....2 "verdict is a word, that means to speck the truth. So what we are asking of you to do is speck the truth. thats why in the bible, it says, verily, verily, I say unto you, truth, truth, I say unto you. Speak the truth, whatever that may be ."....(3). "Since yesterday, there was a question raised. Somebody had ask about the opportunity to hear more evidence. The evidence that we have before us, that it.There is not going to be anymore evidence that we can request."(R-251,Ln:7,-R-252, Ln:6.)

(e) There after, the jury began deliberating and rendered verdict of guilty of two of three charges, being cc-2002-M-134,and cc-2002-M-136 and mistrial declared on cc-2002-M-134, due to un-unanimous verdict.(R-252,Ln:22,-R-258, Ln:7).

## ARGUMENT

The Supreme Court (U.S.) in Allen V. United States,164 U.S.492,501-02, approved trial courts practicing of admonishing a deadlock jury, to make a further effort to reach a verdict;there is noting that " a judge may instruct jurors that absolute certainty is not expected and that the object of a jury system is to obtain unanimous verdict through considerations of others views."

In this instant case, petitioner contends that the trial court abused his discretion by simply coercing the jury to reach a guilty verdict,and abused the standards of an Allen charge to do so i.e.,

The court in U.S. V. Paniagua-Ramos, 135.F.3d 193,198 (1st. cir.1998) rendered that it was an abuse of discretion in the courts giving an Allen charge because charge ,which contained insufficient language to inform jury of the right to fail to agree, coerced jury into conviction even though jury had informed judge on... three prior occasions that it was unable to reach a verdict.

In this instant case,after a very short time, of deliberating the jury informed the court that they were unable to vote unanimous.(a). above)

Therefore, the trial court, in"Allen charge persuasion „" charged the jury that" it was common for a jury not to be unanimous."

However, throughout this entire charge, the trial court never informed the jury that it was there right to fail to agree, or that alone holdout was permitted under law, and the jurors were never told that no juror was expected to give up their beliefs,and could hold on to their opinion even if it resulted in a un-unanimous vote.

Instead the jury was informed by the trial court that he has held a jury an entire week before they reached a verdict, and the courts time is very valuable, considering they read that other people are waiting to have there cases tried, and further, that the parties in this case want the matter resolved, therefore the court could not release the jury.(b.above.)

In response, one of the jurors pleaded to the court, "what if we cannot vote unanimous", and the trial court further failing to inform the jury that they have a right to hold on to their belief,and fail to agree, would result in a deadlock, etc. ,and they may be relieved .

Instead, the trial court continued to inform the jury that "they would spend tomorrow " or "all next week"or "into the weekend if need be " until they voted unanimously. (c.above)

The jurors decided to break until the following day; still unable to vote unanimously, after further deliberations.

After further deliberations the following day, the trial court, after having received a notation from one of the jurors, requesting to hear more evidence,the court simply instructs the jury that "no other jury could have more information than they have. (d,(1),above) attempts to arouse the juries Christian beliefs, passions, and prejudices (d.(2)above),and concludes the instructions with reminder of the note, and informs the jury that there is no more evidence to be requested. (d.(3)above).

Certainly, these instructions lead the jury to believe that if it took a day, the weekend ,the entire week or better, the court would not release them until there was a unanimous vote, and the jury never being informed that they had a right to hold their beliefs of not guilty would result in the fact that the state simply did not meet their burden of proving petitioners guilt.etc. resulted in the jury finding petitioner guilty.(e.above),certainly insufficient in language and abuse of its discretion in  trial courts giving of an Allen charge. Paniagua,id.

-68-

cont-3

The court in U.S. V. McClatchy,249F3d,348, 359 (5th.cir. 2001) noted that a trial court has broad discretion to give modified Allen charge as long as it is not coercive" See also U.S. V. Chigbo, 38 F.3d 543,544, r.1,546 (11th.cir 1994).

In this instant case, it is perfectly clear as described above, that the trial courts instructions the following day was a further attempt to coerce the jury into a majority verdict, rather than to advise the jury of their right, and procedures they must/can follow as a juror, to find petitioner not guilty if not convinced of his guilt, or guilty, if so convinced, or deadlocked if so the case.

In U.S. V. Silvern, 484 F.2d. 879, 883(7th cir 1973) (en banc) the court held that,"a court may only restate an instruction that was previously given to the jury; variants in language or supplements or additions serve merely to proliferate appeals." see chigbo.id.

In this instant case, the courts instructions to the jury on the first day,vs. the following, restate his attempt to coerced as so described above,however,the following day, the trial court extends his efforts into a completely different category so as to pry into the juries biblical beliefs, and assures the jury that no other jury has had more evidence before them,which is simply-a statement made to state specifically that the majority of juries have convicted on less, and biblical statements to purify the evidence as known truth by the court .

In U.S. V. McElhiney, 275 F3d 928, 948 (10th. cir. 2001) the court held that the trial court coerced the jury because supplemental Allen charge did not admonish jury regarding conscientiously held convictions,and court emphasized its desire to have a verdict reached, expense of trial, and danger involved in trying case".

In this instant case, the trial courts tactics are the very same as in McElhiney. id. the trial courts simply exposed his desire to have the verdict reach unanimously as guilty, as no other juror could have more evidence before them, and remined them that the courts valuable time depended on them to hurry up and render a verdict, and even attempted to reach by touching on their own private biblical beliefs.

Specifically, the record in this case will reflect that the trial court was begging the jury to render a verdict of guilty.

With respects to the harmless error analysis, the courts in ,U.S. V. Scisum,32 F.3d.1479,1484,(10th.cir.1994) rendered that it was not harmless error when after jurors revealed to judge exported communications

.... reluctance to convict defendant,juror subsequently voted to convict and stated that verdict "her own" when polled.

In this instant case, it was never known in this case what the numerical division of the jury was,however, there was a numerical division, and as described above, the jury was initially confident that they would not be able to vote unanimous after further deliberations. (above).

Even after further deliberations, the jury sent a note to the trial court requesting information, or further evidence , (d.(3)above), and after the above described instructions, the jury voted guilty on two of the three charges, one of which charge was mistrial due extraneous extra-record information as described below in part "B".

However, the record clearly reflects that had it not been for the trial courts said coercive influence on the jury, the verdict was more prone to have been not guilty or deadlock,had the jury been aware that they had a right to hold to their beliefs that the evidence did not persuade them that petitioner was guilty, but obviously changed that belief and stated the verdict their own.(R-245,Ln:15 R-255, Ln:19)

It was perfectly obvious, as described above, that the courts charge/instructions was not harmless error, and were clearly prejudicial to the petitioners due process right(14th. Amend. U.S. Const.) to a fair and impartial trial/jury. (6th. Amend U.S. Const.)

The courts instructions/charge, was not directed at the entire jury, but at the juror in favor of a not guilty verdict, rather they were majority or minority in said favor, the juror were simply pressured thereby to change their firm belief from the fact that the state did not persuade them that petitioner was infact guilty ,and herefore, the prejudice result from the trial courts coercive improper influence on the juries resulting verdict and imposes upon petitioners said constitutional rights due the courts insufficient language,and abuse of its discretion, hereby denied petitioner due process and fair trial,impartial jury rights guaranteed by the United States constitution,(U.S.Const.Amend.14,6.) by directing a verdict against petitioner, and anew trial is warranted.

B.)          ISSUE RRESENTED AND ARGUMENT

WHETHER THE DUTY OF THE JURY TO BE FAIR, IMPARTIAL,
AND RENDER THEIR VERDICT FROM THE EVIDENCE OF
THIS CASE, WAS IMPAIRED BY EXTRANEOUS, EXTRA_RECORD
INFORMATION INFLUENCED UPON THE JURY DURING THE COURSE
OF VIOR- DIOR AND THROUGHOUT THE ENTIRE TRIAL PROCEEDING.

---

INSTANCE (ii)

(f) During Vior-Dior, the trial court informed the jurors,
that he was selecting two juries at the same time, one
jury being for the petitioner, Kenny Price, facing 3-counts
of unlawful distribution of a controlled substance, in
violation of 13A-12-211,Ala.Code.; and the second jury
being for Penny Lemke, also facing charges for unlawful
distribution of a controlled substance, in violation of
13A-12-211.Ala code, of whom (Lemke) will be tried after
petitioner s trial, (R-1A,Ln:1,-R-8A,Ln:6.)

(g) During the course of opening arguments, Prosecution
informed the jury that the petitioners wife will be on
trial after petitioners, who involved in the three charges
that petitioner was charged with, yet turned out to be
petitioners case. (R-26,Ln:24,-R-28,Ln:10.)

(h) During the course of petitioners trial proceeding,and
on one of many occasions, state witness, Agent Bob Williamson,
informs the jury that Penny Lemke is the petitioners
girlfriend. (R-107,Ln:5-16.)

(i) On another of many occasions, states Key Witness,Angela
Brock, not only informs the jury that Penny Lemke is so
acquainted with the petitioner, but actually identified
Lemke by indicating, of whom was a spectator of petitioners
trial. (R-107,Ln:22,-R-108,Ln:21.)

In Remmer v. U.S. ,347 U.S. 227-29(1954). The U.S.
supreme court held that "juror exposure to extraneous
material generally creates a presumption of prejudice".
In this instant case, petitioner contents that the
exposure to the jury of his trial, that Penny Lemke
was petitioners wife/girlfriend involved in three charges
petitioner faced, which turned out to be petitioners
created prejudice so profound, that the jury was impaired
in their ability to make a fair and impartial determination
from the petitioners case, as to whether he is guilty as
so alleged , thus having presented an air to the jury

that petitioners accomplice/co-defendant, also facing the same instances of charges, that prosecution discovered was the petitioners charges, and there by prejudicing petitioners possibilities of having a fair and impartial trial, free from tainted evidence of conflicting CO-DEFENDANT knowlege, and prosecutions sure discovery, and honest corrections.

The presumption of prejudice seems to apply when communications or contact of persons or extra record information," regards the matter pending before the court." see: U.S. V. Brooks, 161 F.3d 1240, 1246-47(10th cir. 1998).

In this instant case, Lemke was introduced to the jurors, by the court, as facing the same charges as the petitioner. (F.above)

Additionally, prosecution identified Lemke as not only petitioners wife, but as obviously petitioners accomplice or, co-defendant, acting in the commission of the same alleged crimes, and all of which three crimes petitioner was charged with, prosecution discovered was Lemkes fault. (g. above)

Not to exclude that Lemke was repeatedly classed as petitioners wife or girlfriend throughout petitioners entire trial proceeding, involved in alleged unlawful distributions of a controlled substance out of petitioners home, where they allegedly made the controlled substance (R-52,R-124), (c.above), by Agent Williamson, and informant Brock, but to add insult to injury, Brock pointed Lemke out to the jury during trial as a spectator who Brock had purchased said narcotic from during the course of crimes petitioner was accused of committing.

Certainly, these actions/identifications, gave the jury pro-se contact with Lemke, before trial, during trial, and supplanted in their minds during the course of their deliberations;

Further, petitioner contends that thus was extraneous extra-record information improperly placed before the jury to successfully inflame the prejudices of the jurors with evidence not admissible before the court, thus of which undermined defense, and improperly, unduly, created a conflict with non-meritable evidence(ground III) which increased petitioners propensity of committing the offense alleged.

cont=7

Petitioner believes that prejudice should be specifically obvious in this case,due the above described, as the resulting outcome,was for the jury to find petitioner guilty of a crime which was never proven by state that petitioner had committed (ground 3.above) without use of thus type, extraneous exposures to jury.

However the courts in Eslaminia V.White,136 F.3d 1234, 1239, (9th.cir. 1998). note that "when the presumption of prejudice is applied,it may be overcome by a showing that overwhelming evidence of the defendants guilt renders the exposure to the information harmless."

In this instant case, besides the perjured testimonies of Agent Williamson, and his informant, Angela brock (ground IV above);the evidence in this case is extremely insufficient to even sustain a conviction. (III above.); exculpatory evidence was withheld from this case (ground V above);and the improper display of Lemke was cumulative information improperly placed before the jury, extremely a true matter of inherent prejudice.

A defendant, who can establish prejudice as a result of extraneous influence is entitled to a new trial. see:( U.S. V. Harber, 53 F.3d 236,241-43,(9th. cir. 1995) noting that;"New trial required because case agents report summerizing governments case against defendant not admitted into evidence was relied upon by jury during deliberations".

In this instant case, there is not much difference, instead of the case agents notes, it was ore tenus of the case agents notes involving Lemke, who was not a witness nor an exhibit, - or admitted into evidence in any form, and as described above, and supported by trial record, thus above described, is the only considerable evidence for the jury .

Thus simply an undue,inflammatory persuasion on the verdict which prejudiced petitioners right to a fair and impartial trial,and entitles petitioner to a new trial, or in the alternative, with respects to the insufficiency of evidence to legally sustain a conviction. Lawson V.Brog, 60F.3d 608(9th.cir.1995.)

### STATEMENT OF THE FACTS.

INSTANCE(iii)

(j) During vior-dior, the trial court asked the jurors if anyone had been on the Grand Jury which returned an indictment in this case... in which Jackie Warner was the fore person of the Grand Jury; of which no-one juror responded in affirmative (R-9A,Ln:5-13).

-73-

(k) Warner was chosen as petit jury fore person, handing down verdict (R-254,Ln:6-25); (R-255,Ln:1-25).

(1) After verdict entered defense counsel brought to the court attention that the fore person of the jury, Jackie Warner, has a relationship with a Jeniffer Senn, who has a severe grievance with petitioner, and that the fore person,Jackie Warner was observed in lengthy conversations with Jennifer Senn during jury selection, of whom Senn, was a spectator in the court room at that time. (R-260,Ln:7-262,Ln:9.)

(m) A Mary Senn, was a potential juror, who was struck on grounds that she could not believe a defendants plea of not guilty over the word of a police. (R-31A,Ln:-16.)

(n.) The Grand Jury Indictment was signed by someone other than Jackie Warner as fore person . initials L.R. (C-11-12) The pet jury verdict form(s) were signed by Jackie Warner, as petit jury fore person.(C-48)

C.)          ISSUE PRESENTED AND ARGUMENT.
     WHETHER THE PETIT JURY WAS CONTAMINATED BY OUTSIDE
     CONTACT AND IMPROPER INFLUENCES BY THE TRIAL COURT.

As described above, the trial court asked if any of the potential jurors had served on the Grand Jury..." in which in Jackie Warner was the fore person of Grand Jury." (R-9A,Ln:5-13.) (j above)....

It appears from the records that the trial court was reading from the indictment,which was returned against petitioner (C-11,12) and the court concludes, "Its hard to read this writing . No-one was..?.id.

The signature of the fore-person of the Grand Jury, clearly Reads Lloyd Rainey", or with all due respects to a simple mistake, the initials of said fore-person are clearly L.(first name) and R.(last name).(C.-12).

Jackie Warner, was a potential juror who specks up during vior-dior, as having served in the military. (R-29A,Ln:21,-R-30,Ln:1.) and Jury .(C.48),(R-254,Ln:6-25.); (R-255, Ln:1-25.)

-74-

and in no way, form or fashion, could the signature on the Grand Jury fore-person/ indictment resemble Jackie Warner or J.(first name), and W.(last name), in event of even a mistake.

As Jackie Warner, was a chosen name called upon by the trial court in the presence of all potential juror,who (Warner)just happened to be a potential juror, petitioner believes that the said identified portion of the trial record will reflect that the trial courts calling Warners name out of the clear blue, was more than a misconception of American scribbling.

In Packer V. Hill,277F.3d 1092,1105(9th.cir.) the court render that "the judges coercive actions which affected the verdict had a substantial and injurious effect on the defendants due process rights."

In Packer, the question is whether the courts actions had a substantial and injurious effect or influence in determining the juries verdict,having applied the Brecht standard of Brecht V. Abrahamson,507U.S. 619,623,629-30 (1993)(structural defects).

In this instant case, petitioner contends that it is perfectly obvious from the face of the trial record, that out of approximately forty eight potential jurors, the trial court identified "Jackie Warner", as a Grand Jury Fore-person, of whom was not the said fore-person.

However,had Jackie Warner actually served on the Grand Jury's accusatory body, then this would be a violation of petitioners sixth Amendment guarantee that the petit Jury will be selected from a pool of names representing a cross section of community. Batson V.Kentucky, 476 U.S. 79,90 LEd 2d 69,106 S CT 1712(note 5.a;b.)

The relevant question here is out of the 48 potential juror, if Warner was not on the Grand Jury ,did the trial court know Warner and call his name out as having sat on the Grand Jury as a fore-person, to make the other jurors feel more comfortable, and be more prone to have selected Warner as their petit jury fore-person, as it would appear from

the record that approximately two thirds of the selected jury had never been on a jury before, and would be more prone to have selected Warner's experienced position as a fore-person,(R-9,Ln:10-15.) of whom Warner, was selected as the petit jury fore-person and was more prone to be believed of anything he said in the jury room, as the reminder of the jury was mislead to believe that Warner was a member of the Grand Jury,hearing "All" evidence, perhaps not made admissible by trial court. (R-9A,Ln:5-13)

This, as supported by the trial Record,id.,and with respects to, (Remmer,id.,and U.S. V. Brooks,id.) reflects the trial court roll in exposing extraneous extra record information to the jury,of which roll of the trial court had resulted in misrepresenting material facts of Warner to the jurors, for the purpose of influencing the jurors, (Packer.id.; Brecht,id.) to result in choosing Warner as petit jury fore-person.

Certainly, a matter on part of the trial court causing prejudice beyond presumptions, and certainly a structual defect in the trial record. (Brecht.id.)

To assume that this would be the end would be reasonable, however, this matter tends to get worse with Warner.

As described above, after the verdict had been handed down by Warner, the fore-person of the petit Jury ,(R-254, Ln:6-25;R-255,Ln:1-25.) defense counsel brought to the courts attention that the fore-person of the petit jury, (Warner) has a relationship with, and was observed in lengthy conversations during jury selection,with a Ms.Jennifer Senn,of whom has a severe grievance with petitioner.(R-260,Ln:7.,-R-262,Ln:9.); see also (Ineffective assistance of trial counsel, ground 8F.)

Thus, Warner was involved in conversations during the entire trial proceeding on breaks. (see,exhibit "3").

Even more conspicuous to this issue is that a Ms. Mary Senn,was struck from the jury as a potential juror, as Mary Senn could not believe petitioners innocence claim over police testimony fairly .(R-31A,Ln: 1-6.) and Jennifer Senn was one of the six cases the informant in this case made for the task force. (see exhibit "3".#4,5)

As defense counsel brought this, in part, to the courts attention the trial court basically rendered that petitioner had wavied his rights on the issue since the verdict had been handed down by Warner. (R-260,Ln:7, R-262,Ln:9;)

Rule 18.4,(e),Ala. R.crim.P. allows either party or the court to challenge a prospective juror for cause,before striking the jury, petitioner does not argue his trial counsel ineffectiveness in this issue.

However, the Alabama Supreme Court in Harris, V. State, 177 Ala.17,at 20,5950.205,at206(1913), notes that such challenge for cause maybe made at anytime before the jury is sworn, but after a juror is sworn and empanelled to trie the issue he cannot challenge or excused except by consent or for a cause originating since he was sworned.

-76-

cont-11

In this instant case, the court did not wait and give
prosecution the opportunity to consent, not consent or
otherwise make an on the record objection to preserve this
cause. The trial court immediately denied defenses
attempted challenge and admonished counsel in a hostile
manner, changing the subject, and unwilling to hear any
further arguments from defense, regardless of cause which
could have been shown of spectators hostile to defense,
having contract/communications with the jury through due
investigation of the court regarding this matter.

Certainly, a presumption of prejudice in the scope of
Remmer,id, and U.S. V. Brooks,id., when considering not
only Jennifer Senns statues regarding petitioner,and Mary
Senns, status being struck from the jury on the grounds
that she would believe a police testimony over petitioners,
and not to exclude kinship between Mary and Jennifer Senn,
and a severe vendetta of Jennifer Senn against petitioner.
In U.S. V. Patrick,965 F.2d 1390, 1399 (6th.cir. 1992)
the court rendered that no new trial was required in
prosecution for violations of currency transaction reporting
act, because no indication of actual bias where jurors
incorrectly responded on Void-Dire that he did not have
relatives or friends who had been criminal defendants"

In this instant case, a question arises as to honesty
of Warner in the same respect.

Warner was asked if he to ,had family, friends, etc. who
had been affected directly or indirectly at all by the use
illegal drugs,(R-24A,Ln:5,-R-25A,Ln:7.) of where Warner
chose to conceal the facts that his friend, Jennifer Senn,id.,
was also indicted for unlawful distribution of a controlled
substance by the same informant as petitioner.

Further, Jennifer Senns relationship with petitioner was
a matter of severe conflict as Senn was not allowed at
petitioners home, and Senn knew of and flaunted petitioners
past criminal sex offenses as a means of intimidating and
retaliating against petitioner.

Certainly, Warners conversations with Senn(s) should have
been in question by the court, as all options merely leads
to Senns hostile injection to Warner of extra record
information about petitioners  past which may have reached
the jurors, considering that Warners was obviously known by
the trial court,and instigate by the trial court as the
resulting petit Jury Fore -person, and most therefore prone
to assure the causing of a guilty verdict with respect to

-77-